NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-5088

STOLZ *v*. J & B STEEL ERECTORS, INC., ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Stolz v. J & B Steel Erectors, Inc.,* Slip Opinion No. 2018-Ohio-5088.]

*Workers' compensation—Immunity from tort claims—Self-insured construction projects—R.C. 4123.35(O)—R.C. 4123.35(O)'s grant of immunity to subcontractors enrolled in a contractor's self-insurance plan from claims by employees of another enrolled subcontractor does not violate right-to-remedy, right-to-jury, or equal-protection provisions of Ohio Constitution.*

(No. 2017-1245—Submitted May 8, 2018—Decided December 20, 2018.)

ON ORDER from the United States District Court for the Southern District of Ohio, Western Division, Certifying a Question of State Law, No. 1:14-cv-44.

_____

**DEWINE, J.**

{¶ 1} Ohio law allows a general contractor on certain large construction projects to "self-insure" and provide workers' compensation coverage for its own

employees and for the employees of subcontractors that enroll in the contractor's self-insurance program. An employee who is injured on the job may not pursue a negligence claim against the general contractor or an enrolled subcontractor but must instead seek compensation pursuant to Ohio's workers' compensation laws. In this case, which comes to us by way of a certified question from the United States District Court, we consider whether this scheme violates certain provisions of the Ohio Constitution. We conclude that it does not.

## I. Background

{¶ 2} This is the second time in the same federal lawsuit we have been called upon to answer a question about the contractor-self-insurance program. *See Stolz v. J & B Steel Erectors, Inc.*, 146 Ohio St.3d 281, 2016-Ohio-1567, 55 N.E.3d 1082, ¶ 3-8 ("*Stolz I*"). The district-court case arose from a workplace accident that occurred during construction of the Horseshoe Casino in Cincinnati. Daniel Stolz was injured when a floor upon which he was working collapsed, causing him to fall some 25 feet. Stolz was employed as a concrete finisher for Jostin Construction, Inc. ("Jostin"). And Jostin was a subcontractor of Messer Construction Company ("Messer"), the general contractor for the project.

{¶ 3} Prior to the start of construction, Messer received permission from the Ohio Bureau of Workers' Compensation to act as the self-insuring employer on the project under R.C. 4123.35(O). Under the statute, Messer provided workers' compensation coverage on the project for its own employees as well as the employees of subcontractors like Jostin that chose to enroll in Messer's self-insurance plan ("enrolled subcontractors").

{¶ 4} After he was injured, Stolz sued Messer and several of the subcontractors for negligence. Messer and three of the enrolled subcontractors moved for summary judgment on the grounds that they are immune from liability under R.C. 4123.35(O)'s provisions concerning contractor self-insurance.

**{¶ 5}** The district court granted summary judgment to Messer, as the general contractor, but refused to extend immunity to the subcontractors. Following summary judgment, we accepted our first certified question of state law from the federal court. That question asked whether R.C. 4123.35 and 4123.74 provide immunity to enrolled subcontractors from tort claims brought by employees of other enrolled subcontractors. *Stolz I*, 146 Ohio St.3d 281, 2016-Ohio-1567, 55 N.E.3d 1082, at ¶ 8. We answered the question in the affirmative, concluding that the statutes "create a legal fiction that a self-insuring employer for a self-insured construction project is the single employer, for workers' compensation purposes, of all employees working for enrolled subcontractors on that project." *Id.* at ¶ 27.

**{¶ 6}** Back before the district court, Stolz amended his complaint to allege that R.C. 4123.35(O) violates various provisions of the United States and Ohio Constitutions. Once more, the enrolled subcontractors petitioned the district court to certify a question of state law to this court. Again, we accepted. The question is:

> "Whether Ohio [R.C.] 4123.35(O) is unconstitutional as applied to the tort claims of an enrolled subcontractor's employee who is injured while working on a self-insured construction project and whose injury is compensable under Ohio's workers' compensation laws."

(Brackets sic.) 151 Ohio St.3d 1451, 2017-Ohio-8842, 87 N.E.3d 220, quoting the district court's certification order.

## II. Ohio's Workers' Compensation System and R.C. 4123.35(O)

**{¶ 7}** The Ohio Constitution authorizes the legislature to establish a state fund for the purpose of "providing compensation to workmen and their dependents,

for death, injuries or occupational disease, occasioned in the course of such workmen's employment" and to require "compulsory contribution thereto" from employers. Ohio Constitution, Article II, Section 35. An employer that "pays the premium or compensation provided by law * * * shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease." *Id.*

{¶ 8} The legislature established the Ohio workers' compensation system under this authority. *See* R.C. Chapter 4123. Most employers participate in the system by paying premiums into a state insurance fund that administers and pays out claims. R.C. 4123.35(A). The scheme also allows certain employers who possess "sufficient financial and administrative ability" to self-insure their workers' compensation obligations. R.C. 4123.35(B). These "self-insuring employer[s]" have the same immunity from liability as other employers but pay claims directly to injured employees and the dependents of deceased employees. *Id.*

{¶ 9} R.C. 4123.35(O) takes the self-insurance principle a step further. It allows the administrator of the workers' compensation system to grant a self-insuring employer the privilege of self-insuring certain large construction projects. The self-insuring employer may administer workers' compensation claims not only for its own employees but also for the employees of subcontractors enrolled in the plan. R.C. 4123.35(O). In return, the self-insuring employer gains protection against claims by its own employees as well as the claims of employees of enrolled subcontractors. *Id.* And as we explained in *Stolz I*, an enrolled subcontractor also receives protection against claims by employees of another enrolled subcontractor. 146 Ohio St.3d 281, 2016-Ohio-1567, 55 N.E.3d 1082, at ¶ 27. The question now before us is whether this grant of immunity to enrolled subcontractors violates certain provisions of the Ohio Constitution.

4

### III. Stolz's Constitutional Claims

{¶ 10} In his amended complaint, Stolz alleged that R.C. 4123.35(O) violates various provisions of the state and federal Constitutions. The question certified by the district court does not distinguish between Stolz's federal and state claims. We answer certified questions of "Ohio law," S.Ct.Prac.R. 9.01(A), and thus we will limit our analysis to Stolz's claims under the Ohio Constitution.

{¶ 11} Stolz alleged violations of seven provisions of the Ohio Constitution. But in his briefing before this court, Stolz argues only that R.C. 4123.35(O) violates the due-process and equal-protection guarantees of the Ohio Constitution. Within these arguments, he contends that R.C. 4123.35(O) infringes upon fundamental rights protected by the right-to-jury and right-to-remedy provisions of the Ohio Constitution. Because he has not raised any arguments concerning the other provisions of the Ohio Constitution referred to in his amended complaint, we deem such claims to be abandoned. *See Household Fin. Corp. v. Porterfield*, 24 Ohio St.2d 39, 46, 263 N.E.2d 243 (1970). As to the constitutional claims that Stolz does raise, we conclude that neither has merit.

### A. Due Course of Law

{¶ 12} Stolz first argues that R.C. 4123.35(O)'s grant of immunity to enrolled subcontractors violates his rights to due process under Article I, Section 16 of the Ohio Constitution. That section provides, "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Under a plain reading, the constitutional provision does not speak to "due process" at all but, rather, to an individual's right to access the court system and to seek a remedy. For many years, however, we have treated the provision as equivalent to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Wilson v. Zanesville*, 130 Ohio St. 286, 289-290, 199 N.E. 187 (1935), *overruled in part on other grounds*, *Cincinnati v. Correll*, 141 Ohio St.

535, 49 N.E.2d 412 (1943); *Adler v. Whitbeck*, 44 Ohio St. 539, 568-569, 9 N.E. 672 (1887). No party has asked us to do otherwise today.

{¶ 13} Stolz primarily argues that R.C. 4123.35(O) violates his rights to substantive due process. While the Due Process Clause of the Fourteenth Amendment on its face would seem to be concerned with only the adequacy of procedures employed when one is deprived of life, liberty, or property, the United States Supreme Court has read it to include a substantive component that forbids some government actions "regardless of the fairness of the procedures used to implement them," *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). We have also recognized substantive-due-process protections under the Ohio Constitution. *See Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 48-49.

{¶ 14} In a substantive-due-process challenge, "[t]he first (and often last) issue * * * is the proper characterization of the individual's asserted right." *Blau v. Fort Thomas Pub. School Dist.*, 401 F.3d 381, 393 (6th Cir.2005), citing *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Government actions that infringe upon a fundamental right are subject to strict scrutiny, while those that do not need only be rationally related to a legitimate government interest. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 18.

{¶ 15} Stolz contends that R.C. 4123.35(O) violates two fundamental rights guaranteed by the Ohio Constitution: the right to a jury trial and the right to a remedy. We may quickly dispose of the argument that R.C. 4123.35(O) infringes upon Stolz's right to a jury trial. The jury-trial guarantee extends to those civil cases in which the right existed at the time of the adoption of the Ohio Constitution. *Belding v. State ex rel. Heifner*, 121 Ohio St. 393, 169 N.E. 301 (1929), paragraph one of the syllabus; *Arrington v. DaimlerChrysler Corp.*, 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, ¶ 22. The jury-trial guarantee does not, however, prohibit the legislature from altering a common-law cause of action. *Stetter v. R.J.*

*Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 64. Rather, the legislature may " 'alter, revise, modify, or abolish the common law as it may determine necessary or advisable for the common good.' " *Id.*, quoting *Arbino* at ¶ 131 (Cupp, J., concurring).

{¶ 16} In *Arrington*, we held that the constitutional right to a jury trial does not extend to a worker seeking to participate in the workers' compensation fund. *Arrington* at ¶ 26-27. We explained that "the statutory workers' compensation scheme was intended as a replacement for the void of common-law remedies for workers injured on the job." *Id.* at ¶ 24. Because the act " 'abolishes all right of recovery in ordinary cases,' " it " 'leaves nothing to be tried by jury.' " *Id.*, quoting *Mountain Timber Co. v. Washington*, 243 U.S. 219, 235, 37 S.Ct. 260, 61 L.Ed.2d 685 (1917). In enacting R.C. 4123.35(O), the General Assembly exercised its constitutional authority to abolish an employee's right to recover in tort from an enrolled subcontractor and replaced it with a right to recover through the workers' compensation laws. Thus, like the employee in *Arrington*, Stolz has no constitutional right to a jury trial for his workplace-injury claim.

{¶ 17} We also reject Stolz's argument that R.C. 4123.35(O) infringes upon his right under Article I, Section 16 to a "remedy by due course of law." We have held that "the right-to-remedy provision applies only to existing, vested rights and that the legislature determines what injuries are recognized and what remedies are available." *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, ¶ 13. To violate the guarantee, a statute must be a "serious infringement of a clearly preexisting right to bring suit." *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 355, 639 N.E.2d 31 (1994).

{¶ 18} In *Stetter*, we considered an intentional-tort statute that limited an employee's ability to recover in tort from his employer to situations in which the employee could show that the employer acted with a deliberate intent to injure; claimants who could not meet this standard could receive compensation only

through the workers' compensation system. 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, at ¶ 44, 60. Under the prior version of the statute, an employee could recover for an intentional tort by showing that an injury was substantially certain to result from the employer's conduct. *Id.* at ¶ 27. We concluded that even though the new statute removed a tort remedy that had previously existed, it did not violate the right-to-remedy provision. *Id.* at ¶ 60. We explained that the workers' compensation system provided meaningful remedies for employees who had been injured by an intentional tort as defined by the statute. *Id.* Further, we held that in enacting the statute in question, the General Assembly acted pursuant to its power to modify common-law causes of action. *Id.* Similar considerations apply here: in enacting R.C. 4123.35(O), the legislature exercised its authority to modify an employee's cause of action against enrolled subcontractors, and Stolz and injured workers like him may obtain an adequate remedy through the workers' compensation system.

{¶ 19} Thus, we reject Stolz's claim that R.C. 4123.35(O) violates the jury-trial and right-to-remedy guarantees of the Ohio Constitution. Because Stolz has not shown that the statute infringes upon a fundamental right, we apply rational-basis review to his claim. Under rational-basis review, we will uphold the statute as long as it is rationally related to a legitimate government interest. *Arbino*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 66. We grant "substantial deference" to the General Assembly's predictive judgment in making that determination. *State v. Williams*, 88 Ohio St.3d 513, 531, 728 N.E.2d 342 (2000).

{¶ 20} Ohio's workers' compensation system is the "result of a unique compromise between employees and employers, in which employees give up their common-law remedy and accept possibly lower monetary recovery, but with greater assurance that they will receive reasonable compensation for their injury." *Stetter* at ¶ 54. In recognition of this compromise, we have upheld various aspects of the workers' compensation system in the face of due-process challenges. In

8

*Kaiser v. Strall*, 5 Ohio St.3d 91, 93-94, 449 N.E.2d 1 (1983), we held that a workers' compensation statute that bars an injured worker from pursuing a tort claim against a fellow employee does not violate the injured worker's due-process rights. We found the contention that the scheme was unconstitutional to be "particularly mystifying, given the fact that its very adoption would abrogate" the provision of the Ohio Constitution authorizing the creation of the workers' compensation fund. *Id.* at 93, citing Ohio Constitution, Article II, Section 35.

{¶ 21} Similarly, in *Stetter*, we looked to the underlying purposes of the workers' compensation system in upholding a statutory restriction on an employee's ability to sue his employer for an intentional tort. 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, at ¶ 74-76. We explained that one primary rationale undergirding the statutory compromise was to " 'minimize litigation, even litigation of undoubted merit.' " *Id*. at ¶ 74, quoting 6 Larson, *Workers' Compensation Law*, Section 103.03 (2008).

{¶ 22} R.C. 4123.35(O) furthers the purposes of the workers' compensation system by putting a project with a general contractor and multiple subcontractors on the same footing as a large construction project undertaken by a single contractor. By extending immunity to enrolled subcontractors, R.C. 4123.35(O) encourages subcontractors to engage in large-scale construction projects they might otherwise shy away from because of concerns about accident-related litigation. In addition, it provides a quicker, and more certain, means of recourse for injured employees. Thus, we have little difficulty concluding that the legislature acted with a rational basis in enacting R.C. 4123.35(O). We therefore reject Stolz's substantive-due-process challenge.

{¶ 23} Stolz also presents what he characterizes as a procedural-due-process claim. He says that employees "were not reasonably put on notice by the language of the statute that they would be deprived of their rights to a jury trial and remedy as to non-employer, third-party contractors." In essence, his argument is

that his procedural-due-process rights were violated because he could not have anticipated our decision in *Stolz I* interpreting R.C. 4123.35(O) as barring an employee's claim against an enrolled subcontractor.

{¶ 24} A procedural-due-process claim challenges the adequacy of the procedures employed when the government deprives a person of life, liberty, or property. *Ferguson v. State*, 151 Ohio St.3d 265, 2017-Ohio-7844, 87 N.E.3d 1250, ¶ 42. Here, Stolz is not challenging the procedural adequacy of a governmental action but, rather, expressing a substantive disagreement with this court's construction of the statute. Because his challenge is not to the adequacy of procedures employed by the government in depriving him of life, liberty, or property, he does not assert a procedural-due-process violation.

### B. Equal Protection

{¶ 25} Article I, Section 2 of the Ohio Constitution provides: "All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." Stolz claims that his equal-protection rights are infringed upon because he is treated differently than a worker who is "on a traditional, state-funded project that does not take advantage of R.C. 4123.35's self-insured provision."

{¶ 26} Our analysis of Stolz's substantive-due-process claim gives away the ending as to his equal-protection claim. When—as here—a statute does not infringe upon a fundamental right or involve a suspect classification, it will be upheld as long as it is rationally related to a legitimate government interest. *Ferguson* at ¶ 31. As we explained in the due-process section of our analysis, the classification rationally advances a legitimate government interest by extending the limitations on damages provided for in the workers' compensation system to enrolled subcontractors in large construction projects. In addition, it advances the government's interest in allowing injured workers a certain, and prompt, mechanism for the payment of benefits. Because R.C. 4123.35(O) satisfies

rational-basis review, it does not violate the Equal Protection Clause of the Ohio Constitution.

### IV. Conclusion

{¶ 27} The United States District Court for the Southern District of Ohio asked a question of state law as to whether R.C. 4123.35(O) is "unconstitutional as applied to the tort claims of an enrolled subcontractor's employee who is injured while working on a self-insured construction project and whose injury is compensable under Ohio's workers' compensation laws." We answer the question in the negative: the provision does not violate the Ohio Constitution's right-to-remedy, right-to-jury, or equal-protection provisions.

So answered.

KENNEDY, FRENCH, and DEGENARO, JJ., concur.

FISCHER, J., concurs, with an opinion.

O'CONNOR, C.J., and O'DONNELL, J., concur in judgment only.

_____

**FISCHER, J., concurring.**

{¶ 28} I fully and respectfully concur in the majority opinion and its resolution of the arguments presented by the parties. I write separately, however, to emphasize that the unique language and historical background of this state's Equal Protection Clause, Article I, Section 2 of the Ohio Constitution, should be carefully analyzed. In a future case, this court should reexamine our precedent holding that the Ohio Equal Protection Clause is actually the "functional equivalent" of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

{¶ 29} Because the parties in this case did not challenge this court's traditional understanding of the two clauses as functionally equivalent, the majority properly follows that precedent. Today's decision should not, however, be taken to mean that the precedent is unchallengeable.

## I. Introduction

{¶ 30} This court has previously held that the state courts may recognize protections under the Ohio Constitution that are greater than those provided by the United States Constitution. *Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. In *Arnold*, the court conducted an historical analysis, concluding that when adopting Article I, Section 4 of the Ohio Constitution, the people of Ohio "chose to go even further" than the Second Amendment to the United States Constitution regarding the right of an individual to possess firearms. *Id.* at 43. Thus, it is not a forgone conclusion that a clause in the Ohio Constitution is the "functional equivalent" of a clause in the federal Constitution that addresses a similar issue.

## II. The History of the Ohio and United States Equal Protection Clauses

{¶ 31} The Equal Protection Clause of the Ohio Constitution was adopted as part of the 1851 Ohio Constitution, whereas the Fourteenth Amendment to the United States Constitution was not ratified until 1868. Therefore, there can be no legitimate argument that the Ohio Equal Protection Clause was the "functional equivalent" of the federal Equal Protection Clause for the first 17 years that the Ohio clause existed—there was no federal clause to which it could be equivalent, functional or otherwise.

### A. The Ohio Equal Protection Clause

{¶ 32} The Ohio Equal Protection Clause is similar in some ways to the Equal Protection Clauses found in the 1776 Virginia Declaration of Rights and the 1776 Pennsylvania Constitution. The Ohio Equal Protection Clause provides, "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same * * *." Article I, Section 2, Ohio Constitution. Both the 1776 Virginia and 1776 Pennsylvania clauses provided that "government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community."

12

*Virginia Declaration of Rights of 1776, Section 3*; Pennsylvania *Constitution of 1776, Article V*. One obvious difference is that neither the Virginia nor the Pennsylvania version actually included the word "equal." Another difference is the inclusion of the language "or ought to be" in both the former Virginia and Pennsylvania Equal Protection Clauses but not in the Ohio Equal Protection Clause. The phrase "or ought to be" that was contained in the Virginia and Pennsylvania versions has been taken to mean that those clauses were more descriptive of a political philosophy than clauses, like the Ohio Equal Protection Clause, that specifically confer rights. Steven H. Steinglass & Gino J. Scarselli, *The Ohio State Constitution* 85 (2011).

**{¶ 33}** Idaho Constitution, Article I, Section 2 contains the same language as the Ohio Equal Protection Clause, and South Dakota Constitution, Article VI, Section 26 contains similar language. Both the Idaho and South Dakota versions, however, were ratified in 1889, 21 years *after* the federal clause was ratified. Kansas's equal-protection clause, Kansas Bill of Rights, Section 2, was ratified in 1859, 9 years before the federal clause was ratified. The Kansas version contains language similar to the Ohio Equal Protection Clause, but the Ohio and Kansas clauses are too distinct to be incontrovertibly viewed as equivalent. And even if the two clauses were identical, they should not be viewed as equivalent without significant background and historical analysis that supports that view. No other state court's interpretation of its own equal-protection clause is binding on this court, and because each state version has a different historical background, interpretations provided by state courts analyzing their own equal-protection clauses are of limited, if any, persuasive value to an Ohio court interpreting the Ohio Equal Protection Clause.

**{¶ 34}** Moreover, this court did not cite the Ohio Equal Protection Clause in any published decision until 1895, well after the passage of the federal Equal Protection Clause. *See State ex rel. Schwartz v. Ferris*, 53 Ohio St. 314, 341, 41

N.E. 579 (1895). Thus, this court has not conducted a full analysis of the Ohio Equal Protection Clause that was not influenced by federal Equal Protection Clause jurisprudence, despite the fact that the Ohio clause is 17 years older than the federal clause.

*B. The United States Equal Protection Clause*

{¶ 35} The federal Equal Protection Clause provides that "[n]o state shall * * * deny to any person within its jurisdiction the equal protection of the laws." The Fourteenth Amendment, including its Equal Protection Clause, was drafted primarily by Congressman John Bingham of Ohio. Richard L. Aynes, *The Continuing Importance of Congressman John A. Bingham and the Fourteenth Amendment*, 36 Akron L.Rev. 589, 590 (2003). It was ratified in 1868.

{¶ 36} The Ohio and federal Equal Protection Clauses were drafted relatively closely to each other in time, so it is reasonable to assume that Congressman Bingham was familiar with the language in the Ohio clause. Yet each clause's language is significantly different from the language of the other. Therefore, either a plain-meaning or an intentionalist interpretation of the Ohio Equal Protection Clause could well lead to the determination that the Ohio clause is too distinct from the federal clause for them to be considered "functional equivalents." *See* Paul Brest, *The Misconceived Quest for the Original Understanding*, 60 B.U. L.Rev. 204 (1980) and fn. 5, quoting *Home Bldg. & Loan Assn. v. Blaisdell*, 290 U.S. 398, 453, 54 S.Ct. 231, 78 L.Ed. 413 (1934) (Sutherland, J., dissenting) ("For the strict intentionalist, 'the whole aim of construction, as applied to a provision of the Constitution, is * * * to ascertain and give effect to the intent of its framers and the people who adopted it' " [ellipsis sic]).

*C. Ohio Supreme Court Cases Analyzing the Ohio Equal Protection Clause*

{¶ 37} Traditionally, this court has treated the Ohio Equal Protection Clause and the federal Equal Protection Clause as "functionally equivalent." *See Schwartz*,

14

53 Ohio St. at 341, 41 N.E. 579 ("it is sufficient to say that the provisions of this section of the federal constitution, as to this question, are not broader than the second section of our bill of rights"); *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 60, 717 N.E.2d 286 (1999) ("the federal and Ohio Equal Protection Clauses are to be construed and analyzed identically"); *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 29 (the federal and Ohio Equal Protection Clauses are "functionally equivalent and require the same analysis").

{¶ 38} Nonetheless, that precedent has been questioned in at least two recent decisions. *See State v. Noling*, 149 Ohio St.3d 327, 2016-Ohio-8252, 75 N.E.3d 141, ¶ 11 ("the Equal Protection Clause of the Ohio Constitution is coextensive with, *or stronger than*, that of the federal Constitution" [emphasis added]); *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368. In *Mole*, Chief Justice O'Connor authored the lead opinion, which was joined by two other justices, and another justice concurred in judgment only. The chief justice made clear that the Ohio Constitution is a document of force independent from the United States Constitution, *id.* at ¶ 14, and that there are situations in which "the guarantees of equal protection in the Ohio Constitution independently forbid * * * disparate treatment" even if the federal Equal Protection Clause does not forbid that treatment, *id.* at ¶ 23. Justice French, in a dissenting opinion in *Mole* that was joined by Justice O'Donnell, stated that the Ohio Equal Protection Clause may in theory provide greater protections than those provided by the federal clause but that holding as much requires "an independent analysis of the equal-protection guarantee in Article I, Section 2 of the Ohio Constitution premised on its language, history or early understandings." *Id.* at ¶ 117 (French, J., dissenting).

{¶ 39} Thus, this court's jurisprudence on the Ohio Equal Protection Clause has not been uniform. Given the recent divergence from our traditional understanding of the clause, it is not unreasonable to suggest that this court should,

with the benefit of full briefing, thoroughly reexamine the Ohio and federal Equal Protection Clauses and determine whether they are indeed functional equivalents.

### III. Testing Functional Equivalence

{¶ 40} One major problem with the functional-equivalence approach is that United States Supreme Court precedent regarding some amendments to the United States Constitution, including the Fourteenth Amendment and its Equal Protection Clause, is far from static. In the 1960s, the court applied a rational-basis test unless the statute at issue "classified on the basis of race" or "provided for unequal distribution of fundamental rights." William D. Araiza, *The Section 5 Power and the Rational Basis Standard of Equal Protection*, 79 Tul. L.Rev. 519, 521-522 (2005). By the end of the 1970s, the court had started applying differing levels of scrutiny that were "higher" than the rational-basis test to cases involving gender, illegitimacy, and alienage. *Id*. at 522. By the mid-1990s, the court was applying in equal-protection gender cases a standard of review similar to that which it was applying in equal-protection race cases. *Id*.

{¶ 41} As noted above, this court first recognized the Ohio Equal Protection Clause as the functional equivalent of the federal Equal Protection Clause in 1895. *See Schwartz*, 53 Ohio St. at 341, 41 N.E. 579. Plainly, the United States Supreme Court's interpretation of the federal Equal Protection Clause has changed significantly during the 120-plus years that have passed since this court's first recognition of functional equivalence. With this in mind, it is arguable that the Ohio Equal Protection Clause should be interpreted as providing the protections that the United States Supreme Court had recognized under the federal Equal Protection Clause until 1895. Moreover, in the future, the United States Supreme Court may continue to add or subtract from the protections it interprets the federal Equal Protection Clause as providing.

{¶ 42} By treating the two clauses as functionally equivalent, this court delegates its final authority to interpret the Ohio clause to the United States

16

Supreme Court, which that court exercises whenever it substantially alters its interpretation of the federal clause. This "upward delegation" of the duty to interpret the Ohio Constitution is improper under our federal system and unconstitutional under the Ohio Constitution. *See* Article IV, Section 1, Ohio Constitution. Thus, a strong argument can be made that this court cannot blindly accept the current, or any new, federal interpretation but instead must independently determine when interpreting the Ohio Equal Protection Clause whether to follow the United States Supreme Court's interpretation of the federal Equal Protection Clause.

**{¶ 43}** Because this court's recent caselaw on the Ohio Equal Protection Clause is not uniform, because the Ohio clause has language and a historical background that are substantially different from those of the federal Equal Protection Clause, and because the United States Supreme Court's jurisprudence on the federal clause has repeatedly shifted since this court first made the "functional equivalence" determination, a future challenge to this court's equal-protection functional-equivalence precedent should be carefully analyzed and resolved with thorough reasoning.

## IV. Conclusion

**{¶ 44}** Again, the parties in this case did not challenge this court's traditional understanding that the Ohio Equal Protection Clause is the functional equivalent of the federal Equal Protection Clause. As is proper, the majority opinion does not conduct an analysis of unraised arguments. I take no position on whether the arguments proposed above, or any other arguments challenging this court's functional-equivalence holdings, would lead me to conclude that the Ohio Equal Protection Clause is anything other than the functional equivalent of the federal Equal Protection Clause as currently interpreted by the United States Supreme Court. Nonetheless, if such arguments were properly briefed and submitted to this court, I believe that the court would need to conduct "an

independent analysis of the equal-protection guarantee in Article I, Section 2 of the Ohio Constitution premised on its language, history or early understandings," *Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, at ¶ 117 (French J. dissenting).

————————————

Kohnen & Patton, L.L.P., Colleen M. Blandford, and Jordan T. Steiner, for petitioner J & B Steel Erectors, Inc.

Patsfall, Yeager & Pflum, L.L.C., Susan M. Salyer, Stephen M. Yeager, and Stephen J. Patsfall, for petitioners TriVersity Construction Co., L.L.C., and D.A.G. Construction Co., Inc.

Beckman Weil Shepardson, L.L.C., Stephanie M. Day, and Kristen M. Myers; and Goodson & Company and Brett C. Goodson, for respondent Daniel Stolz.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, and Michael J. Hendershot, Chief Deputy Solicitor, in support of petitioners for amicus curiae State of Ohio.

Green & Green Lawyers, L.P.A., Jane M. Lynch, and Jared A. Wagner, in support of petitioners for amicus curiae Messer Construction Company.

————————————