[Cite as *Thorne v. Toledo*, 2024-Ohio-5308.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Gary T. Thorne, Individually
 and as his capacity as a taxpayer

  Appellant

v.

City of Toledo, et al.

  Appellees

Court of Appeals No.  L-23-1243

Trial Court No.  CI0202102980

**DECISION AND JUDGMENT**

Decided:  November 1, 2024

* * * * *

George R. Smith, Jr., for appellant.

Dale R. Emch, City of Toledo Law Director,
Jeffrey B. Charles, Karlene D. Henderson, and
John T. Madigan, for appellees.

* * * * *

**DUHART, J.**

**{¶ 1}** Appellant, Gary T. Thorne, appeals the judgment of the Lucas County Court of Common Pleas, which granted the motion for summary judgment filed by appellees, the city of Toledo ("City") and City Planner Molly Maguire, and denied the motion for summary judgment filed by appellant. For the reasons that follow, the trial court's judgment is affirmed.

## Statement of the Case

{¶ 2} On September 10, 2021, Thorne filed a taxpayer action pursuant to R.C. 733.59 for injunctive relief. He also sought declaratory judgment relief under R.C. 2721.01 et seq. against the City and the Old West End Association (OWEA), and money damages against the City and Maguire individually, alleging that: (1) the City's interpretation and enforcement of Toledo Municipal Code ("TMC") 1111.1104, prohibiting the retroactive issuance of a Certificate of Appropriateness ("COA"), violated the Fifth and Fourteenth Amendments to the U.S. Constitution and Ohio Constitution Article 1, Sections 1, 16, and 19, and was unconstitutional on its face and as applied; and (2) Maguire exacted a deprivation of Thorne's constitutional rights by retaliating against him for his exercise of protected speech. Appellees timely filed answers to Thorne's complaint, and in their amended answers added the affirmative defense of failure to exhaust administrative remedies.

{¶ 3} On October 12, 2022, the court, on motion of the OWEA, entered an order dismissing the OWEA from the lawsuit. No appeal is taken from this order.

{¶ 4} On March 7, 2023, the City and Maguire filed a motion for summary judgment, and on April 7, 2023, Thorne timely filed a cross-motion for partial summary judgment.

{¶ 5} On September 27, 2023, the court filed its opinion and judgment entry granting appellees' motion for summary judgment and denying Thorne's motion for partial summary judgment. It is from this judgment that appeal is taken.

2.

**Statement of the Facts**

{¶ 6} Thorne has resided in the Old West End Historic District ("OWEHD") since 1987 and owns rental property located at 2601 Parkwood, Toledo, Ohio, which also lies within the OWEHD. It is Thorne's efforts to replace the roof on his rental property that gave rise to the current lawsuit.

{¶ 7} Neither Thorne nor appellees dispute that the Toledo Building Code requires a building permit for a roof replacement in Toledo. *See* TMC 1305.01 ("Permits: when required."). In addition, provisions set forth in TMC 1103.0302, 1103.0306, and 1111.1101, require property owners to obtain a COA prior to making any "environmental change," i.e., "exterior alteration," to property located within a historic district. *See also,* TMC 1103.0302(G) ("'Exterior architectural feature' means the architectural style, general design and arrangement of the exterior of a structure including, but not limited to, the type, color and texture of the … roof.") The parties are all in agreement that roof replacements constitute "environmental changes," which require prior authorization in the form of a COA before a building permit will be issued. TMC 1111.1104 provides that "[a]pplications for retroactive [COAs] shall not be accepted, and retroactive [COAs] shall not be issued."

{¶ 8} Thorne sought neither a COA nor a building permit before starting to replace the roof on April 13, 2021. City building inspector Douglas Lalonde observed Thorne's unlicensed contractor removing the old roof without a permit, and on April 14, 2021, the City issued a stop work order ("SWO").

3.

{¶ 9} Although Thorne subsequently attempted to get a COA and building permit for the job, his application was rejected by the Plan Commission. According to testimony by Chief Building Official Steven Shrake and Director of the Plan Commission Thomas Gibbons, a COA will not issue while an SWO is in place, and an SWO will not be removed unless the applicant for a building permit first obtains a COA. Somewhat inconsistently, Maguire testified that she could have issued the COA in this case, as long as Thorne discontinued the illegal work after he was served with the SWO, and as long as he had the SWO removed within 48 hours. Maguire admitted that she never communicated this information to Thorne during a heated telephone conversation that occurred between them on April 14, 2021.

{¶ 10} Maguire stated that in Thorne's case, a COA would have been considered retroactive, because the work on Thorne's roof had continued after the SWO issued. According to Thorne, however, Lalonde had instructed the roofing crew that the SWO did not prohibit them from laying felt paper to make the roof watertight. Thorne alleges that the roofing crew complied with the SWO.

{¶ 11} Thorne made no attempt to appeal the Planning Director's decision.

{¶ 12} As a direct result of Thorne's failure to get a permit before commencing work on his property, Thorne was criminally cited and found to be in violation of TMC 1301.04 ("No person shall maintain, occupy or use a building or structure or part thereof, that has been erected or altered in violation of the provisions of this Part Thirteen-Building Code.")

4.

**{¶ 13}** Appellees contend that Thorne violated both TMC 1301.04, which requires that a permit be issued for a roof replacement, as well as TMC 1103.0306, which requires that a COA be issued before any "contractor, owner or other person may make any environmental changes to any landmark property or property within a designated historic district." According to appellees, "[t]he separately filed COA 1103.0306 historic district violation was dismissed as it was filed after the 1301.04 violation was resolved."

**{¶ 14}** While represented by counsel, Thorne initially filed a motion to dismiss the municipal court complaint for failure to obtain a building permit. Thorne then withdrew his motion, changed his plea to "no contest," and was found guilty of the offense stated in TMC 1301.04. Shortly thereafter, he was issued a building permit, which allowed him to complete his roofing project. He subsequently filed the pending action.

### Assignments of Error

**{¶ 15}** On appeal, appellant asserts the following assignments of error:

> I. The Trial Court Erred in Ruling on Summary Judgment as the City of Toledo's Interpretation and Enforcement of Toledo Municipal Code § 1111.1104 and the Administrative Scheme Implemented by the City to Enforce its Building and Zoning Codes Exact a Deprivation of Rights to Property and Due Process of Law in Violation of the Fifth and Fourteenth

Amendments to the U.S. Constitution and the Ohio Constitution.

II.    The Trial Court Erred in Finding Administrative Remedies Were Available to Plaintiff.

III.   The Trial Court Erred in Granting Summary Judgment to Maguire as There was Sufficient Evidence of Record That she Retaliated Against Plaintiff for the Exercise of his Right to Free Speech and is Thus Entitled to Neither Qualified Immunity nor Immunity Under State Statute.

**Law and Analysis**

**Standard of Review**

{¶ 16} Appellate courts review summary judgment de novo, employing the same standard as the trial court. *King v. Buildtech Ltd. Construction Development*, 2023-Ohio-1092, ¶ 22 (6th Dist.), citing *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996). (Additional citation omitted.) Summary judgment is proper only when the moving party demonstrates:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

6.

*Id.*, citing *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66 (1978); Civ.R. 56(E).

{¶ 17} "A party seeking summary judgment must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact." *Id.* at ¶ 23, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996); *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988), syllabus. "When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact." *Id.*, citing Civ.R. 56 (E) and *Riley v. Montgomery,* 11 Ohio St.3d 75, 79 (1984). "A 'material' fact is one that would affect the outcome of the suit under the applicable and substantive law." *Id.*, citing *Russell v. Interim Personnel, Inc.*, 125 Ohio App.3d 301, 304 (6th Dist. 1999). (Additional citations omitted.)

**Relevant TMC Sections**

{¶ 18} Before beginning our analysis, we find it helpful to set forth the relevant statutes in this case.

{¶ 19} TMC 1103.0300 addresses the Historic Overlay Districts in Toledo, including the Old West End, which is at issue in this case. TMC 1103.0301 provides a purpose for the Historic Overlay Districts, stating:

> The City Council has declared as a matter of public policy
> that the preservation, protection, and use of areas, places,
> buildings, structures and works of art – whether designated as
> local landmarks or in local historic districts or National

7.

Register Historic Districts – is a public necessity and is required in the interest of the health, safety and welfare of the people. The purposes of the -HO Historic Overlay Districts are to:

A. Safeguard the heritage of the City by preserving sites and structures within National Register Historic Districts and/or within state and locally designated historic districts that reflect the City's history and architectural past.

B. Stabilize and improve property values.

C. Strengthen the economy of the City.

D. Protect and enhance the City's attractions to residents, tourists and visitors.

E. Enhance the visual and aesthetic character, diversity and interest of the City.

F. Foster civic pride in the beauty and notable accomplishments of the past.

G. Promote the use and preservation of historic sites and structures for the education and general welfare of the people of the City.

H. Preserve sound existing housing stock and safeguard the residential character of primarily residential neighborhoods.

{¶ 20} Under TMC 1103.0306, "No contractor, owner or other person may make any environmental changes to any landmark property or property within a designated historic district unless a valid written Certificate of Appropriateness has been issued by the respective Historic District Commission." Similarly, under TMC 1111.1101, "No contractor, owner or other person may make any environmental changes to any property designated as a historic landmark or within a designated Historic District unless a valid

8.

written Certificate of Appropriateness has been issued by the respective Historic district Commission in accordance with the procedures of this section." "'Environmental change' means any exterior alteration … of any property, requiring or not requiring a building permit subject to the historic overlay provisions of the Zoning Code."

{¶ 21} TMC 1111.1103 provides that "Applications for a Certificate of Appropriateness for environmental changes upon landmarks or within designated Historic Districts shall be submitted directly to the Planning Director on forms provided by the Plan Commission, together with four complete sets of all applicable plans, designs, elevations, specifications and documents relating thereto." Pursuant to TMC 1111.1107(G), building permit applications to the Division of Inspection for construction or rehabilitation work within a designated historic district shall not be accepted or approved without a Certificate of Appropriateness.

{¶ 22} As indicated above, TMC 1111.1104 provides that "[a]pplications for retroactive Certificates of Appropriateness shall not be accepted, and retroactive Certificates of Appropriateness shall not be issued."

{¶ 23} Under TMC 1111.1109, "[d]ecisions by the Planning Director may be appealed by the applicant to the Historic District Commission," "[d]ecisions by the Historic District Commission may be appealed to the Plan Commission," and decisions by the Plan Commission may be appealed to the court of common pleas as set forth in R.C. Chapter 2506.

9.

**{¶ 24}** TMC Part 13, the "Building Code," provides that "[n]o person shall maintain, occupy or use a building or structure or part thereof that has been erected or altered in violation of the provisions of this Part Thirteen-Building Code." TMC 1301.04. And "[w]hoever violates any provision of Part Thirteen-Building Code for which a penalty is not otherwise provided shall be guilty of a misdemeanor 1st degree." TMC 1319.04(A). Finally, TMC 501.99 (a) provides that penalties for a misdemeanor of a 1st degree can include up to six months in jail and a maximum fine of $1000.00.

### First Assignment of Error

**{¶ 25}** In his first assignment of error, Thorne makes four basic claims: (1) enforcement of the non-retroactivity provision in TMC 1111.1104 led to an unconstitutional taking vis-à-vis the water damage to his property; (2) TMC 1111.1104 lacks a rational relationship to a legitimate governmental purpose and thus violates substantive due process; (3) enforcement of the non-retroactivity provision in TMC 1111.1104 violates procedural due process because it deprived him access to administrative review; and (4) TMC 1111.1104 is void for vagueness regarding the term "retroactive." We will address each of these claims in turn.

### Unconstitutional Taking

**{¶ 26}** First, Thorne argues that the City's interpretation and enforcement of TMC 1111.1104 constituted an unconstitutional taking. "In order to establish a taking, a landowner must demonstrate a substantial or unreasonable interference with a property right." *State ex rel. OTR v. Columbus*, 76 Ohio St.3d 203, 206 (1996). "Such an

10.

interference may involve the actual physical taking of real property, or it may include the deprivation of an intangible interest in the premises." *Id.*

{¶ 27} Here, Thorne argues that the City took his property by forcing him to go through the criminal process after he broke the law by beginning to do roofing work without a permit, which left his house exposed to the elements for several months resulting in water damage. Thorne's argument, however, relies on a faulty premise. Contrary to his repeated assertions, the City did not damage Thorne's property. Indeed, Thorne himself notes that Lalonde told him that he could make the roof watertight when he issued the SWO. Thus, the water damage that allegedly occurred to Thorne's property was a result of his own failure to adequately waterproof the roof; it was not a result of any enforcement action by the City. Therefore, Thorne's unconstitutional taking claim must fail.

## Substantive Due Process

{¶ 28} Second, Thorne argues that the City's interpretation and enforcement of TMC 1111.1104 violated substantive due process.

{¶ 29} "The Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution require that administrative proceedings comport with due process." *Freeman v. Ohio Elections Commission,* 2024-Ohio-1223, ¶ 26 (10th Dist.) citing *Richmond v. Ohio Bd. of Nursing*, 2013-Ohio-110, ¶ 10 (10th Dist.), citing *Mathews v. Eldridge*, 424 U.S. 319 (1976). Due process has two components: substantive

11.

due process and procedural due process. *State v. Pennington*, 2002 WL 104937 (10th Dist. Jan. 29, 2002).

{¶ 30} "'The essence of substantive due process is the protection from certain arbitrary, wrongful governmental actions irrespective of the fairness of the procedures used to implement them.'" *Freeman* at ¶ 26, citing *Southern Health Facilities, Inc. v. Somani*, 1995 WL 765161 (10th Dist. Dec. 29, 1995). "'In a substantive-due-process challenge, "[t]he first (and often last) issue … is the proper characterization of the individual's asserted right."'" *State v. Caroline's Kids Pet Rescue,* 2023-Ohio-761, ¶ 24 (11th Dist.), quoting *Stolz v. J&B Steel Erectors, Inc.*, 2018-Ohio-5088, ¶ 14, quoting *Blau v. Fort Thomas Pub. School Dist.*, 401 F.3d 381, 393 (6th Cir. 2005), citing *Reno v. Flores*, 507 U.S. 292, 302 (1993). "Government actions that infringe upon a fundamental right are subject to strict scrutiny, while those that do not need only be rationally related to a legitimate government interest." *Stolz* at ¶ 14, citing *State v. Lowe*, 2007-Ohio-606, ¶ 18.

{¶ 31} Thorne specifically complains that the City's strict prohibition against the issuance of retroactive COAs unjustifiably "clos[es] the door on administrative review" -- thereby forsaking legitimate public policy concerns such as preserving the aesthetics and historic character of the neighborhood -- and, instead, "relegate[s] the property owner to defense of a criminal proceeding." As applied to himself, Thorne claims that he was excessively punished in that in addition to paying fees for removal of the SWO and issuance of a building permit and being convicted of a misdemeanor of the first degree,

12.

he suffered loss to his property "in the thousands of dollars" because he "was left with his roof exposed for almost three months in the Northwest Ohio spring weather, his property sustaining substantial water damage (paint damage interior of house, plaster cracking and falling, floors buckled, one of the mantels becoming warped, undetermined electrical issues, damage to ceiling fans and light fixtures) as a result of the delay." While he acknowledges that "[c]harging property owners criminally is sufficient to further deterrence and incentivize future compliance with the approval process," Thorne contends that both deterrence and government oversight of "environmental changes" to private property "can be legally furthered by allowing administrative review of 'untimely' applications for a COA … and initiating a separate, parallel criminal proceeding against noncomplying property owners."

{¶ 32} To the extent that these allegations raise a substantive due process claim, we recognize that the Home Rule Provision, Section 3, Article XVIII of the Ohio Constitution grants local police powers to municipalities, and that "[a]s part of these police powers, a municipality may adopt zoning regulations governing the construction, modification, and demolition of buildings within the municipality." *Columbus v. Bahgat*, 2011-Ohio-3315, ¶ 24 (10th Dist.), citing *Jaylin Investments, Inc. v. Moreland Hills*, 2006-Ohio-4, ¶ 10. (Additional citation omitted.) "'Courts should not interfere with zoning decisions unless the municipality exercised its power in an arbitrary and unreasonable manner and the decision has no substantial relation to the public health, safety, morals, or general welfare.'" *Kinzel v. Ebner,* 2023-Ohio-164, ¶ 68, quoting *Jaylin*

13.

at ¶ 10, citing *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926). "'The burden of proof remains with the party challenging an ordinance's constitutionality, and the standard of proof remains "beyond fair debate."'" *Id.* at ¶ 13, quoting *Godberg Cos., Inc. v. Richmond Hts. City Council*, 81Ohio St.3d 207, 214 (1998). "[T]here is little difference between the 'beyond fair debate' standard and the 'beyond a reasonable doubt' standard." *Cent. Motors Corp. v. Pepper Pike*, 73 Ohio St.3d 581, 584 (1995), citing *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988).

{¶ 33} Here, Thorne states that the prohibition against retroactive COAs has no rational relationship to a governmental purpose, because once a property owner begins work without a COA (and the matter is necessarily converted to a criminal matter) the City is left without any power to oversee "environmental changes" to property located within historic districts, and, thus, the stated purpose of the ordinance is undermined.

{¶ 34} We find, instead, that once the property owner begins work without a building permit and/or COA, the focus of the governmental interest simply changes from the legitimate governmental purpose of overseeing "environmental changes" to the separate legitimate governmental purpose of deterring property owners against noncompliance with the lawful COA requirement. As the City points out, "if citizens were routinely permitted to seek permits after the work was done much confusion and improper building techniques and zoning violation would result." Thorne's argument that the government could have furthered both governmental purposes by allowing administrative review of untimely COA applications in addition to the initiation of a

14.

separate criminal proceeding against noncomplying property owners is simply a policy argument; it does not satisfy his considerable burden of demonstrating that TMC 1111.1104 is not rationally related to a legitimate governmental interest. Therefore, his substantive due process claim must fail.

## Procedural Due Process

{¶ 35} Third, Thorne argues that the City's interpretation and enforcement of TMC 1111.1104 violated procedural due process.

{¶ 36} Procedural due process "ensures that a state will not deprive a person of life, liberty, or property unless fair procedures are used in making that decision." *Kistler v. Conrad*, 2006-Ohio-3308, ¶ 14 (10th Dist.), quoting *State v. Ward*, 130 Ohio App.3d 551, 557, (8th Dist. 1999). Procedural due process rights that are guaranteed by the United States and Ohio Constitutions apply in administrative proceedings. *Biser v. Ohio Dept. of Health,* 2020-Ohio-6836, ¶ 24 (7th Dist.), citing *LTV Steel Co. v. Indus. Comm.* 140 Ohio App.3d 680, 688, (10th Dist.2000). "However, due process is a flexible concept and calls for such procedural safeguards as the particular situation demands." *LTV Steel* at 688-689. "The fundamental concepts of procedural due process are notice and an opportunity for a hearing." *Biser* at ¶ 24, citing *Korn v. Ohio State Med. Bd.,* 61 Ohio App.3d 677, 684, (10th Dist.1998).

{¶ 37} Thorne complains that the prohibition against retroactive COAs wrongfully denied him any opportunity to be heard on the merits of his application. The test for analyzing due process in administrative hearings involves weighing three factors: (1) the

15.

private interest at stake; (2) the risk of erroneous deprivation of that interest and the probable value of additional procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *LTV Steel* at 689, citing *Mathews,* 424 U.S. at 335, .

{¶ 38} Here, Thorne's stated interest is simply the opportunity to be heard on the merits of his application for a COA. Thorne's claim to the contrary notwithstanding, the ordinances did, in fact, provide for such a hearing on a *timely* application.  It was Thorne's own neglect in timely applying for a COA that deprived him of his opportunity to be heard. As for the government's interest in the prohibition against retroactive COA applications, we note that "Ohio and other states 'may erect reasonable requirements for triggering the right to an adjudication." *State v. Gumm*, 2004-Ohio-4755, ¶ 7-8, quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982). Requiring the application to be filed before work is commenced is a reasonable requirement.

{¶ 39} Additionally, Thorne argues that he was not given proper notice.  Citing a form letter sent to Old West End residents, he complains that he was never informed of the consequences of failing to obtain a COA prior to beginning work, specifically, "that any work would be halted mid-stream by issuance of an SWO and [he] would be frozen out of the administrative review process pending disposition of criminal charges which could take months to run their course leaving [his] property exposed to the elements." To the contrary, the ordinances themselves provide clear notice: 1) of the prohibition against retroactive COAs; 2) that, irrespective of the COA requirement, no person shall maintain,

16.

occupy, or use a building that has been altered in violation of the Toledo Building Code; 3) that violation of the building code provision is a misdemeanor of the 1st degree; and 4) that a misdemeanor of the first degree can include penalties of up to six months in jail and a fine of $1,000. Regardless of the adequacy of the form letter or any other notices sent to him, "[a]ll persons are 'conclusively presumed to know the law.'" *In re Estate of Holycross*, 2007-Ohio-1, ¶ 27, quoting *State v. Pinkney*, 36 Ohio St.3d 190, 198 (1988). Thus, Thorne was properly on notice that his retroactive application would not be accepted.

{¶ 40} Therefore, because Thorne had adequate notice and opportunity to be heard on his COA application, his procedural due process claim must fail.

## Void for Vagueness

{¶ 41} Fourth, and finally, Thorne argues that the meaning of "retroactive" in the ordinance prohibiting retroactive COAs is unconstitutionally vague.

{¶ 42} "'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.'" *Kinzel*, 2023-Ohio-164, at ¶ 59, citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "To pass muster under the void-for-vagueness doctrine, Ohio law dictates that an ordinance must survive the tripartite analysis set forth in *Grayned*[:] … (1) the ordinance must provide fair warning to the ordinary citizen of what conduct is proscribed, (2) the ordinance must preclude arbitrary, capricious, and discriminatory enforcement, and (3) the ordinance must not

impinge constitutionally protected rights." *Viviano v. Sandusky*, 2013-Ohio-2813, ¶ 11 (6th Dist.).

{¶ 43} In this case, he contends that the prohibition against retroactive applications could be interpreted to apply at any time from after work commences to after the project is completed. Because the language of the ordinances repeatedly and unambiguously provides that a COA and building permit should be obtained before a person may make "any environmental changes" within a designated historic district, we find that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. *See Kisil* at ¶ 12 (stating that impossible standards of specificity are not required, and that the test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices). Therefore, Thorne's claim that TMC 1111.1104 is unconstitutionally vague must fail.

{¶ 44} For all of the foregoing reasons, because Thorne has not demonstrated that TMC 1111.1104 is unconstitutional, his first assignment of error is not well-taken.

<strong>Second Assignment of Error</strong>

{¶ 45} In his second assignment of error, Thorne asserts that the trial court erred when it found that he had administrative remedies. Thorne's argument is in response to a position taken by the City that because he did not exhaust his administrative remedies, he was barred from raising constitutional claims before the trial court. Notably, Thorne recognizes that "[t]he trial court did not directly rule [his] claims were barred for failure

18.

to exhaust administrative remedies." He claims, however, that "the fact that [the trial court] mentioned he never attempted appeal suggests this was a consideration for the court that weighed in its decision."

{¶ 46} Thorne's second assignment of error is moot and invites this court to issue a purely advisory opinion on whether his constitutional claims were barred for failure to exhaust his administrative remedies. As he notes, the trial court did not make this determination. Further, as discussed above, his constitutional claims fail on their merits. Therefore, whether his claims should have been barred has no effect on the outcome of this decision.

{¶ 47} Accordingly, Thorne's second assignment of error is not well-taken.

### Third Assignment of Error

{¶ 48} Thorne argues in his third assignment of error that the trial court erred in granting summary judgment to Maguire, as there was sufficient evidence of record that she retaliated against Thorne for the exercise of his right to free speech and, thus, she is entitled to neither "qualified immunity" nor "immunity under state statute."

{¶ 49} 42 U.S.C. § 1983 creates a civil cause of action against individuals who, while acting under color of state law, deprive a person of the "rights, privileges or immunities secured by the Constitution or laws" of the United States. *See Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). Qualified immunity protects state officials against liability under 42 U.S.C. § 1983 so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

19.

would have known.'" *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012), quoting *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

{¶ 50} R.C. 2744.03 governs defenses and immunities available in civil actions brought against a political subdivision or an employee of a political subdivision to recover damages allegedly caused by any act or omission in connection with a governmental or proprietary function. R.C. 2744.03(A)(6):

> 'provides immunity to an employee of a political subdivision unless an exception found within R.C. 2744.03(A)(6)(a) through (c) applies.' *Thompson v. Buckeye Joint Vocational School Dist.*, 2016-Ohio-2804, ¶ 27 (5th Dist.). Under the provisions of R.C. 2744.03(A)(6), 'an employee of a political subdivision is immune from liability unless: (1) the employee's acts or omissions are manifestly outside the scope of the employee's employment or official responsibilities; (2) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton and reckless manner; or (3) civil liability is expressly imposed on the employee by a section of the Revised Code.' *Id.*

*Dalrymple v. Westerville*, 2022-Ohio-4094, ¶ 53 (10th Dist.).

{¶ 51} The facts relating to this assignment of error, viewed in a light most favorable to Thorne are as follows. Maguire functioned as both a principal and associate planner for the City. Administrative approval of COA applications was among her job duties, and it is undisputed that she reviewed Thorne's COA applications. She testified that she first became aware that work was being done on Thorne's property when someone called her on April 13, 2022. She stated that there was a crew on site at Thorne's property and that no COA placard was in the window. On April 14, 2022, the

20.

City sent out City building inspector Lalonde and ordered the work to stop. Lalonde subsequently signed the affidavit which provided the probable cause for the complaint to be filed in the Toledo Municipal Court.

{¶ 52} In conflict with testimony by Chief Building Official Shrake and Director of the Plan Commission Gibbons, Maguire testified that she could have issued the COA in this case, as long as Thorne discontinued illegal work after he was served with the SWO, and as long as he had the SWO removed within 48 hours.

{¶ 53} Maguire testified that during a conversation between herself and Thorne on April 14, 2021, Thorne was "demeaning" towards her when she was "offering to try and help him with the situation," and that Thorne insulted her because he was trying to deny that he needed a COA for the roof replacement. Maguire stated that she did not recall providing any guidance to Thorne in terms of what he needed to do to get the SWO removed, and that she ended the conversation by hanging up on Thorne.

{¶ 54} Maguire testified that she had previous dealings with Thorne in 2016, when after Thorne had replaced boards on the stairs of his front steps without applying for a COA, he was served with an SWO. Maguire stated that she assisted Thorne in allowing his work to go before the Commission, in obtaining removal of the SWO and issuance of a building permit, and in keeping Thorne out of housing court, thereby saving him from having to pay extra fines and fees.

{¶ 55} Maguire further testified that in 2018, Gibbons revoked Maguire's authority to assist residents in obtaining approval of work performed before issuance of a

COA, as a result of complaints received by commission members insisting "that all constituents who did illegal work go through the system, based on the Toledo Municipal Code."

{¶ 56} According to Thorne, Maguire's own testimony is sufficient to support a finding that she "refused to assist" him in obtaining a COA and removing the SWO "because she didn't like the way he talked to her." He states that "[r]etaliation by a government official against a person for exercising their right to freedom of speech – even if the speech is critical of the government official or government policy – is a clearly established, well-known constitutional violation of which Maguire was on notice.

{¶ 57} To the contrary, we find that Thorne, in alleging that Maguire, in her capacity as a government employee, did not help him obtain a legally prohibited, retroactive COA, fails to show a violation of a statutory or constitutional right and, thus, fails to demonstrate that Maguire is not entitled to immunity for claims arising under 42 U.S.C. § 1983. Likewise, Thorne's allegation against Maguire does nothing to show that her acts or omissions were manifestly outside the scope of her employment or official responsibilities, or that they were performed with malicious purpose, in bad faith, or in a wanton and reckless manner. Thus, Thorne fails to demonstrate any lack of immunity under state law. Appellant's third assignment of error is found not well-taken.

22.

**Conclusion**

**{¶ 58}** Because there is no genuine issue as to any material fact, the judgment of the Lucas County Court of Common Pleas granting summary judgment in favor of the City and Maguire is affirmed. Thorne is to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.         _____
                                     JUDGE

Myron C. Duhart, J.

                            _____

Charles E. Sulek, P.J.                            JUDGE
CONCUR.

                            _____
                                     JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.