[Cite as *State v. Flanagan*, 2015-Ohio-5528.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-A-0020** |
| DANIEL M. FLANAGAN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court, Western District, Case No. 2014 CRB 00494W.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Michael A. Hiener*, P.O. Box 1, Jefferson, OH 44047 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Daniel M. Flanagan, appeals from the January 14, 2015 and March 25, 2015 judgments of the Ashtabula County Court, Western District, convicting and sentencing him for criminal damaging and domestic violence. On appeal, appellant argues that his conviction is against the manifest weight of the evidence and that the trial court erred in ordering restitution. For the reasons stated, we affirm.

{¶2} On June 27, 2014, a complaint was filed charging appellant with one count of criminal damaging, a misdemeanor of the second degree, in violation of R.C. 2909.06(A)(1), and one count of domestic violence, a misdemeanor of the first degree, in violation of R.C. 2919.25(A). Appellant pleaded not guilty to both charges.

{¶3} On November 26, 2014, appellant filed a notice of alibi pursuant to Crim.R. 12.1, alleging he was elsewhere and with others on the day of the crimes. A bench trial was held on January 14, 2015.

{¶4} Four witnesses testified: two on behalf of appellee, the state of Ohio, Deputy Ryan Reece and Jennifer Flanagan; and two on behalf of the defense, appellant and Richard Coy.

{¶5} Deputy Reece is a road deputy with the Ashtabula County Sheriff's Department. Deputy Reece testified for the state that he was dispatched on May 31, 2014 at 8:29 p.m. to 3837 Overlook Road in Rome Township, Ashtabula County, Ohio due to a report of a domestic assault. Sergeant Truckey responded to the report as well. Upon their arrival, appellant's wife, Jennifer Flanagan, was receiving medical attention in the back of an ambulance. Deputy Reece noticed a cut on the left side of Mrs. Flanagan's lip and a cut on her right knee. Both injuries were bleeding.

{¶6} Deputy Reece also observed a Chevrolet Suburban parked in the driveway which belonged to Christopher Dyer who was also present at the scene. Deputy Reece noticed a side mirror on the vehicle was broken. Deputy Reece asked Mrs. Flanagan what had happened. According to Deputy Reece, Mrs. Flanagan indicated that appellant, her estranged soon-to-be ex-husband, came to the residence, broke the SUV's mirror, and poured gasoline on the vehicle. When she tried to stop

2

appellant, he assaulted her. Specifically, Mrs. Flanagan advised Deputy Reece that appellant punched her in the face, grabbed her, punched her in the face again, pushed her against the garage, tackled her on the concrete driveway, and punched her in the face again before leaving. Deputy Reece smelled gasoline, which appeared to be coming from the engine area, and observed a can by the SUV.

{¶7} Mrs. Flanagan also testified for the state that appellant came to the residence on May 31, 2014 around 8:00 p.m. Her friend, Mr. Dyer, came over in his Suburban to help her mow the lawn. While Mr. Dyer was in the backyard, Mrs. Flanagan was walking out of the garage with a cup of coffee when saw appellant walking up the driveway. She told him to leave. However, appellant did not comply with her request. Rather, according to Mrs. Flanagan, appellant walked toward the Suburban, opened the door, slammed it, and smashed the mirror. She further stated appellant walked to the front of the vehicle, where the hood was open and a gas can was on the ground, and poured gasoline all over the engine.

{¶8} As appellant was pouring gasoline on the engine, Mrs. Flanagan told him to stop and she grabbed a hold of his bicep. Mrs. Flanagan testified that appellant turned around, knocked the coffee cup out of her hand, and punched her in the face. She stepped back, took out her cell phone, and attempted to call 911. However, Mrs. Flanagan said appellant took the phone from her, told her she would not get any more pictures of him, threw the phone, and punched her a second time in the jaw.

{¶9} Mrs. Flanagan attempted to retrieve her cell phone in order to call 911. However, she testified appellant tackled her on the driveway, punched her in the face a third time, grabbed her phone, and left the residence. Mrs. Flanagan ran to the

3

backyard to tell Mr. Dyer, who was mowing the lawn, what had happened and asked him to call 911.

{¶10} Mrs. Flanagan sustained bruising to her jaw and a puncture wound where her tooth went through the side of her cheek. She was bleeding from her lip and cheek. Also, Mrs. Flanagan's knee was cut and bleeding. After being treated at the scene by EMS, Mrs. Flanagan went to an emergency room where she received treatment for the puncture wound to her cheek.

{¶11} At the close of the state's case, defense counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.

{¶12} Appellant testified he started his day around noon on May 31, 2014. Appellant stated he went to his sister's house around 7:00 or 7:30 p.m., where he stayed overnight. He said that others saw him there. Appellant testified he left for 15 or 20 minutes with his brother-in-law, Richard Coy, to go to Circle K to get soda pop. Appellant claimed he never saw Mrs. Flanagan at all on the date at issue. He also denied damaging Mr. Dyer's SUV, dumping gasoline, and striking Mrs. Flanagan.

{¶13} Mr. Coy testified for the defense that appellant came to his house sometime after 2:00 p.m. on May 31, 2014. Mr. Coy said the only time they left was when they went to Circle K. Mr. Coy stated appellant did not seem upset in any way.

{¶14} At the close of all the evidence, defense counsel renewed its motion for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.

{¶15} Following trial, appellant was found guilty of criminal damaging and domestic violence. On March 25, 2015, appellant was sentenced to 180 days in jail, with 180 days suspended, and 90 days house arrest for domestic violence, and 90 days

4

in jail, with 30 days suspended, for criminal damaging. Appellant was ordered to pay $2,496.04 in restitution. He was also ordered to complete two years of supervised probation. Appellant timely appealed and raises the following two assignments of error:

{¶16} "[1.] The conviction is against the manifest weight of the evidence.

{¶17} "[2.] The trial court erred in ordering restitution."

{¶18} In his first assignment of error, appellant contends his conviction is against the manifest weight of the evidence. Appellant additionally alleges there was insufficient evidence to sustain his conviction. Thus, he presents both a sufficiency and a manifest weight argument.

{¶19} With regard to sufficiency, in *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), the Supreme Court of Ohio established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Court stated that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Id.* at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶20} As this court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13-15 (Dec. 23, 1994):

{¶21} "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the [trier of fact], while 'manifest weight' contests the believability of the evidence presented.

5

{¶22} ""(* * *) The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.*""

{¶23} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' '(a) reviewing court (should) not reverse a [guilty] verdict where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'"

{¶24} "On the other hand, 'manifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶25} "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.) (Citations omitted.)

{¶26} Regarding sufficiency, "a reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed

beyond a reasonable doubt." *State v. March*, 11th Dist. Lake No. 98-L-065, 1999 Ohio App. LEXIS 3333, *8 (July 16, 1999). The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991). Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

**{¶27}** Regarding manifest weight, a judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶28}** With respect to the manifest weight of the evidence, we note that the trier of fact is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

**{¶29}** In this case, appellant was charged with, convicted of, and sentenced for criminal damaging, a misdemeanor of the second degree, in violation of R.C. 2909.06(A)(1), and domestic violence, a misdemeanor of the first degree, in violation of R.C. 2919.25(A).

**{¶30}** R.C. 2909.06(A)(1), criminal damaging, states: "No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent * * * [k]nowingly, by any means[.]"

**{¶31}** R.C. 2919.25(A), domestic violence, provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

7

{¶32} As stated, Deputy Reece testified for the state that he was dispatched regarding a domestic dispute on May 31, 2014 at 8:29 p.m. Deputy Reece observed appellant's wife, Mrs. Flanagan, receiving medical attention in an ambulance. Deputy Reece noticed a bleeding cut on the left side of Mrs. Flanagan's lip and a bleeding cut on her right knee.

{¶33} Deputy Reece also observed Mr. Dyer's Suburban parked in the driveway. Deputy Reece noticed that a side mirror on the vehicle was broken. Deputy Reece asked Mrs. Flanagan what had taken place. According to Deputy Reece, Mrs. Flanagan indicated that appellant, her estranged soon-to-be ex-husband, came to the residence, broke the SUV's mirror, and poured gasoline on the vehicle. When she tried to stop appellant, he assaulted her. Specifically, Mrs. Flanagan advised Deputy Reece that appellant punched her in the face, grabbed her, punched her in the face again, pushed her against the garage, tackled her on the concrete driveway, and punched her in the face again before leaving. Deputy Reece smelled gasoline, which appeared to be coming from the engine area, and observed a can by the SUV.

{¶34} Mrs. Flanagan also testified for the state that appellant came to the residence on May 31, 2014 around 8:00 p.m. While Mr. Dyer was in the backyard mowing the lawn, Mrs. Flanagan was walking out of the garage with a cup of coffee when she saw appellant walking up the driveway. She told him to leave. He did not. Rather, according to Mrs. Flanagan, appellant walked toward the Suburban, opened the door, slammed it, and smashed the mirror. She further stated appellant walked to the front of the vehicle, where the hood was open and a gas can was on the ground, and poured gasoline all over the engine.

8

{¶35} As appellant was pouring gasoline on the engine, Mrs. Flanagan told him to stop and she grabbed a hold of his bicep. Mrs. Flanagan testified appellant turned around, knocked the coffee cup out of her hand, and punched her in the face. She stepped back, took out her cell phone, and attempted to call 911. However, Mrs. Flanagan said appellant took the phone from her, told her she would not get any more pictures of him, threw the phone, and punched her a second time in the jaw.

{¶36} Mrs. Flanagan attempted to retrieve her cell phone in order to call 911. However, she testified that appellant tackled her on the driveway, punched her in the face a third time, grabbed her phone, and left the residence. Mrs. Flanagan ran to the backyard to tell Mr. Dyer what had happened and asked him to call 911.

{¶37} Mrs. Flanagan sustained bruising to her jaw and a puncture wound where her tooth went through the side of her cheek. She was bleeding from her lip and cheek. Also, Mrs. Flanagan's knee was cut and bleeding. After being treated at the scene by EMS, Mrs. Flanagan went to an emergency room where she received treatment for the puncture wound to her cheek.

{¶38} Pursuant to *Schlee, supra*, the state presented sufficient evidence upon which the trier of fact could reasonably conclude beyond a reasonable doubt that the elements of R.C. 2909.06(A)(1), criminal damaging, and R.C. 2919.25(A), domestic violence, were proven. Thus, the trial court did not err in overruling appellant's Crim.R. 29 motion.

{¶39} Furthermore, in reviewing and weighing all the evidence presented, we determine that a trier of fact could reasonably conclude appellant was guilty of the charged offenses. The trier of fact heard all of the evidence presented by the state and

9

its two witnesses, as addressed above, establishing appellant's guilt for the crimes committed. The trier of fact also heard the defense's theory, and from appellant and his brother-in-law, alleging appellant was elsewhere and that he did not commit the crimes. The trier of fact apparently placed great weight on and chose to believe the state's witnesses as opposed to appellant and his brother-in-law. *DeHass, supra*, at paragraph one of the syllabus. Based on the evidence presented, we cannot say the trier of fact clearly lost its way in finding appellant guilty of criminal damaging and domestic violence. *Schlee, supra*, at *14-15; *Thompkins, supra*, at 387.

{¶40} Appellant's first assignment of error is without merit.

{¶41} In his second assignment of error, appellant argues the trial court erred in ordering restitution. Appellant asserts the court failed to properly determine that he had the ability to pay and that there was insufficient evidence justifying restitution.

{¶42} We review an order of restitution for abuse of discretion. *State v. Silbaugh*, 11th Dist. Portage No. 2008-P-0059, 2009-Ohio-1489, ¶16. The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.).

{¶43} "'Prior to imposing a restitution order, a trial court must determine the amount of restitution to a reasonable degree of certainty, ensuring that the amount is supported by competent, credible evidence.' *State v. Coldiron*, 12th Dist. No. CA2008-

10

06-062, 2009-Ohio-2105, ¶21. The restitution ordered must 'bear a reasonable relationship to the actual loss suffered by the victim (* * *).' *State v. Stamper*, 12th Dist. No. CA2009-04-115, 2010-Ohio-1939, ¶17." *State v. Jones*, 11th Dist. Lake No. 2012-L-072, 2013-Ohio-2616, ¶11.

**{¶44}** "The amount of the loss may be established with documentary evidence or testimony, however there is no absolute requirement that the victim must demonstrate the loss through documentary evidence." *In re Czika*, 11th Dist. Lake No. 2007-L-009, 2007-Ohio-4110, ¶8, citing *State v. Morgan*, 11th Dist Lake No. 2005-L-135, 2006-Ohio-4166, ¶30.

**{¶45}** R.C. 2929.18 and 2929.28 provide trial courts with guidance on ordering restitution for felony and misdemeanor offenses respectively. R.C. 2929.18(A)(1) and 2929.28(A)(1) authorize trial courts to impose an order of restitution based on the amount of the victim's economic loss. *See Silbaugh, supra,* at ¶17.

**{¶46}** This case involves misdemeanor offenses. Thus, R.C. 2929.28 applies. Specifically, R.C. 2929.28(A)(1) states in part: "In addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a misdemeanor, including a minor misdemeanor, may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section. If the court in its discretion imposes one or more financial sanctions, the financial sanctions that may be imposed pursuant to this section include * * * restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss."

11

{¶47} "Economic loss" is defined in R.C. 2929.01(L) as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes any loss of income due to lost time at work because of any injury caused to the victim, and any property loss, medical cost, or funeral expense incurred as a result of the commission of the offense. 'Economic loss' does not include non-economic loss or any punitive or exemplary damages."

{¶48} In addition, under R.C. 2929.28, "there must be 'some evidence in the record that the court considered the defendant's present and future ability to pay the sanction imposed.'" *State v. Simmons*, 2d Dist. Montgomery No. 26181, 2015-Ohio-446, ¶8, citing *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-060, 2014-Ohio-2238, ¶34, quoting *State v. Reigsecker*, 6th Dist. Fulton No. F-03-022, 2004-Ohio-3808, ¶11.

{¶49} In the case at bar, the trial court asked Mrs. Flanagan a series of questions at appellant's sentencing hearing. The court questioned Mrs. Flanagan regarding her missed work claims. Mrs. Flanagan explained she was absent from work due to various court appearances and could not collect vacation or sick pay for the absences. The court also questioned her about the number of missed work days and her rate of pay. Mrs. Flanagan missed up to six days of work and her hourly rate was $42.50 per hour. Defense counsel did not refute the amount of restitution Mrs. Flanagan was entitled to for lost work. The court further questioned Mrs. Flanagan about her mileage claim as she lives in Columbus during the week.

{¶50} The trial court considered the amount of restitution recommended by the probation office contained in the pre-sentence investigation report, as follows: four days

12

(32 hours) of missed work totaling $1,401.28; mileage for four court dates totaling $837.76; and out-of-pocket medical expenses totaling $257, for a grand total of $2,496.04. The PSI indicates appellant has a GED and was receiving Worker's Compensation benefits at that time because he had not yet been released to work by a doctor. The PSI does not indicate appellant is permanently unable to work.

**{¶51}** The trial court further inquired as to appellant's ability to pay restitution at the sentencing hearing. When asked if appellant was employed, defense counsel indicated he was not. When asked if appellant was employable, defense counsel did not provide a direct answer. Rather, defense counsel indicated he believed appellant was receiving food stamps and may have been receiving Worker's Compensation benefits. When asked if there was any reason appellant could not pay restitution, defense counsel did not provide a direct answer. Instead, defense counsel objected to the amount of restitution.

**{¶52}** Contrary to appellant's argument that there was no documentation supporting a restitution order, we note that documentary evidence is not required. *In re Czika*, *supra,* at ¶8; *Morgan*, *supra,* at ¶30. Rather, loss may be established through testimony. *Id.*

**{¶53}** Based on the facts presented, the amount of restitution was supported by competent, credible evidence. The record reflects the trial court heard testimony and gave proper consideration to appellant's present and future ability to pay restitution. *See State v. Bernadine*, 11th Dist. Portage No. 2010-P-0056, 2011-Ohio-4023, ¶28 (the record indicates the court properly considered a pre-sentence investigation report or a transcript reflecting it considered the defendant's present and future ability to pay

13

restitution); *State v. Perry*, 11th Dist. Lake No. 2004-L-077, 2005-Ohio-6894, ¶79 (restitution was properly based upon evidence contained within the pre-sentence investigation report).

{¶54} Appellant's second assignment of error is without merit.

{¶55} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Ashtabula County Court, Western District, is affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.