[Cite as *State v. Marcellino*, 2019-Ohio-4837.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS.  2019-G-0195** |
| | | **2019-G-0196** |
| BIANCA MARCELLINO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals from the Chardon Municipal Court.
Case Nos. 2018 CRB 00664 A & 2018 CRB 00664 B.

Judgment: Affirmed in part, reversed and vacated in part.


*J. Jeffrey Holland* and *Danamarie Kristyna Pannella*, Holland and Muirden, 1343 Sharon-Copley Road, P.O. Box 345, Sharon Center, OH 44274 (For Plaintiff-Appellee).

*Gregory C. Sasse*, Gregory C. Sasse, LLC, 6642 Silvermound Drive, P.O. Box 941, Mentor, OH 44060 (For Defendant-Appellant).



TIMOTHY P. CANNON, J.

{¶1}     Appellant, Bianca Marcellino ("Marcellino"), appeals from the March 5, 2019 judgment entry of the Chardon Municipal Court finding her guilty, following a jury trial, of two counts of cruelty to animals, misdemeanors of the second degree, in violation of R.C. 959.13(A)(1).  We affirm in part, and reverse and vacate in part, the trial court's judgment.

{¶2}     The evidence and testimony germane to the issues before us on appeal are as follows:

{¶3} Marcellino was charged with two counts of cruelty to animals after a search of her residence revealed two horses in need of emergency medical aid. Initially, the condition of the horses was reported by a neighbor of Marcellino's to Christian Courtwright ("Courtwright"), an agent of the Geauga County Humane Society (the "Humane Society"). After multiple visits to Marcellino's property to observe the condition of the horses over the course of approximately one month, Courtwright was concerned about the lack of progress in rehabilitating them. Despite his concerns, he claimed that Marcellino was uncooperative and eventually refused him entry onto the property. Courtwright then submitted an affidavit for a search warrant (the "Courtwright Affidavit") to the trial court detailing his concerns and observations regarding the horses, which led to a search warrant being issued to remove them from the premises. The relevant contents of the Courtwright Affidavit are discussed in great detail in Marcellino's second assignment of error. Courtwright seized the horses from the property after receiving the search warrant for removal. At trial, Marcellino denied the claim that she was uncooperative.

{¶4} The two horses were removed from Marcellino's residence, consistent with the recommendation of a veterinarian who testified that they were in severe need of care at the time of removal. The veterinarian also testified about the extensive medical testing conducted and observations made in order to determine the horses were emaciated and in need of immediate care. After being removed, the horses were placed on a starvation feeding program and cared for by the Humane Society at its own cost. According to the veterinarian's testimony, the Humane Society was successfully able to rehabilitate the horses to a healthier and unemaciated status within 60 days of their removal.

{¶5} Ultimately, Marcellino was found guilty by a jury on both counts of animal cruelty. At the sentencing hearing on March 5, 2019, she was sentenced to 90 days in

2

jail, which were suspended pending successful completion of a five-year probation term. Also, she was ordered to pay restitution to the Humane Society in the amount of $14,773.03 for the total cost of impounding the two horses.

{¶6}  Marcellino filed timely notices of appeal, which were consolidated for review, and raises two assignments of error.  For clarity and convenience, we consider the assignments out of order as necessary.

{¶7}  Marcellino's second assignment of error pertains to the affidavit submitted by Courtwright in support of granting a search warrant.  It states:

{¶8}  "The trial court erred and abused its discretion by denying the motion for a *Franks* hearing where there were affidavits demonstrating material false statements in the affidavit for a search warrant."

{¶9}  In this case, typical of a *Franks* challenge, Marcellino also filed a motion to suppress.  For reasons that are not clear from the record, the motion to suppress was withdrawn.  Obviously, if the motion to suppress had been maintained, many of the contentions in the *Franks* motion would have been addressed at the hearing on the motion to suppress.  The trial court was confronted with a *Franks* motion but no motion to suppress.  The initial question involves our standard of review in light of this procedural posture.  In *U.S. v. Fowler*, 535 F.3d 408 (6th Cir.2008), the Sixth Circuit Court of Appeals noted that "[t]he standard of review with respect to the denial of a *Franks* hearing is unsettled."  *Id.* at 415, fn. 2.  "Some circuits employ a clear error standard, while others review the denial de novo."  *Id.*

{¶10}  We hold that when the trial court denies a challenge pursuant to *Franks* based on the pleadings alone, we review the decision not to hold a hearing under a clear error standard of review.  Under this standard, we give due weight to inferences the trial

3

court drew from the facts. *See, e.g. State v. Hummel*, 11th Dist. Portage No. 2002-P-0060, 2003-Ohio-4602, ¶11.

{¶11} The United States Supreme Court's opinion in *Franks v. Delaware*, 438 U.S. 154 (1978) contemplates an evidentiary hearing for challenges to search warrant affidavits in the following circumstances:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. * * *

> Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

> On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Id.* at 171-172.

{¶12} Thus, "[t]he Supreme Court of the United States, in *Franks v. Delaware*, set forth a two-part test to be applied in addressing such challenge to affidavits offered in support of a search warrant." *State v. Bangera*, 11th Dist. Geauga No. 2015-G-0021, 2016-Ohio-4596, ¶55. "First, the defendant must make a preliminary showing that the affiant included in his affidavit false statements that were made deliberately or with reckless disregard for their truth." *Id.*; *see also State v. Kidd*, 11th Dist. Lake No. 2006-L-193, 2007-Ohio-4113, ¶42. "'Reckless disregard for the truth' in this context means the

4

affiant had serious doubts as to the truth of his allegations, a very high standard." *Id.*, citing *United States v. Williams*, 737 F.2d 594, 602 (7th Cir.1984).

{¶13} "Second, the court must determine if the allegedly false statements were necessary to the issuing judge's finding of probable cause." *Id.*, citing *Franks, supra*. *See also State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, ¶17, quoting *U.S. v. Karo*, 468 U.S. 705, 719 (1984) ("after excising tainted information from a supporting affidavit, 'if sufficient untainted evidence was presented in the warrant affidavit to establish probable cause, the warrant was nevertheless valid'") and *State v. Jackson*, 11th Dist. Lake No. 9-130, 1983 WL 6126, *2 (Oct. 28 1983) ("The *Franks* decision also stands for the proposition that if the questioned material is found to be false and is set aside and there remains sufficient content in the affidavit to support a finding of probable cause, then the search warrant is valid.").

{¶14} A charge of cruelty to animals requires a finding that Marcellino, inter alia, tortured an animal, deprived it of necessary sustenance, or impounded or confined an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water. R.C. 959.13(A)(1). There is no doubt that the Courtwright Affidavit, if accepted as true, establishes probable cause to believe that a violation of R.C. 959.13(A)(1) had occurred on the Marcellino property.

{¶15} Marcellino argues that the Courtwright Affidavit contained the following deliberately or recklessly false statements:

> 1) The affidavit states that the Defendant's horses were not under the care of a Veterinarian. The veterinarian submitted an affidavit stating that he told the humane agent that the horses were under his care.

2)  The affidavit states that there were no future veterinarian visits to be scheduled whereas the Vet [sic] veterinarian told him that there were to be future visits.

3)  The affidavit claimed the horses were kept in make shift stalls. Affidavits contradicted this.

4)  The affidavit claimed the horses were kept in filthy stalls. Affidavits contradicted this.

5)  The affidavit claimed the horses lacked food and water. Affidavits contradicted this.

6)  The affidavit claimed that a woman with whom the defendant boarded horses, Marne South, was upset with the defendant's failure to care for those horses. Marne South's affidavit contradicts this.

7)  Courtwright claimed that Dr. Baugher indicated concerns about Marcellino's care of the horses but was willing to give her a chance since she had only had them for a short period of time. Baugher's affidavit contradicts this.

8)  "Other statements" in the warrant affidavit are contradicted by affidavits stating that individuals never told the agent what he said they told him, such as, defendant refusing to arrange for the horses to be seen by a veterinarian, etc.

{¶16} The record does not establish any statement in the Courtwright Affidavit that rises to the level of being deliberately or recklessly false.  Marcellino failed to demonstrate that Courtwright had serious doubts as to the truth of his allegations.  In fact, Courtwright ultimately testified as to the statements made in the affidavit.  On cross examination, nothing Courtwright provided in the affidavit was clearly contradicted.  Further, the affidavits provided by Marcellino after the seizure of the horses do not demonstrate that Courtwright acted deliberately or with reckless disregard for the truth.

{¶17} Finally, the allegedly false statements cited by Marcellino were not necessary to the issuing judge's finding of probable cause on the animal cruelty charges. Setting aside the allegedly false statements in the Courtwright Affidavit as presented by

6

Marcellino on appeal, there remains an overwhelming amount of sufficient and uncontradicted statements to support a finding of probable cause for charges of cruelty to animals regarding the two horses. Therefore, the trial court did not err in failing to hold a hearing based on the *Franks* motion.

{¶18} Marcellino's second assignment of error is without merit.

{¶19} Marcellino's first assignment of error pertains to the order of restitution. It states:

{¶20} "The Trial Court erred and abused its discretion in ordering restitution."

{¶21} Marcellino presents three issues for review in her first assignment of error:

[1.] Did the Trial Court err and abuse its discretion by ordering restitution because the Geauga Humane Society was not the victim of the offenses?

[2.] Did the Trial Court err and abuse its discretion by ordering restitution because restitution is limited to the economic loss suffered by the victim?

[3.] Did the Trial Court err and abuse its discretion by ordering restitution because there was no evidence in the record on Bianca Marcellino's ability to pay?

{¶22} The only portion of Marcellino's sentence that has been appealed in the matter sub judice is the court's order of restitution.

{¶23} We review an order of restitution for an abuse of discretion. *State v. Flanagan*, 11th Dist. Ashtabula No. 2015-A-0020, 2015-Ohio-5528, ¶42, citing *State v. Silbaugh*, 11th Dist. Portage No. 2008-P-0059, 2009-Ohio-1489, ¶16. "The term 'abuse of discretion' is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record." *Id.*, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). "An abuse of discretion may be found when the trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous

7

findings of fact.'" *Id.*, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.).

{¶24} "'Prior to imposing a restitution order, a trial court must determine the amount of restitution to a reasonable degree of certainty, ensuring that the amount is supported by competent, credible evidence.'" *Id.* at ¶43, quoting *State v. Coldiron*, 12th Dist. Clermont No. CA2008-06-062, 2009-Ohio-2105, ¶21. "The restitution ordered must 'bear a reasonable relationship to the actual loss suffered by the victim (* * *).' *State v. Stamper*, 12th Dist. No. CA2009-04-115, 2010-Ohio-1939, ¶17." *Id.*, quoting *State v. Jones*, 11th Dist. Lake No. 2012-L-072, 2013-Ohio-2616, ¶11.

{¶25} R.C. 2929.28 governs the issuance of financial sanctions on misdemeanor offenders. That statute states, in pertinent part:

> (A) In addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a misdemeanor, including a minor misdemeanor, may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section. If the court in its discretion imposes one or more financial sanctions, the financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:
>
> (1) * * * restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. * * *
>
> If the court imposes restitution, the court shall determine the amount of restitution to be paid by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. * * *

{¶26} Marcellino points to various instances where a governmental agency cannot be awarded restitution for the cost of conducting business in pursuit of investigating a crime because the agencies are not "victims." Those cases are inapposite to the present matter because there were two victims of Marcellino's actions—the two horses. As the horses cannot receive restitution on their own behalf as victims, the Humane Society argues it is logical that any entity providing for their rehabilitation and care should be reimbursed for those costs. Our inquiry, however, is whether an order of restitution is an authorized means under the statute to reimburse the Humane Society for costs associated with caring for the abused horses.

{¶27} The Third District Court of Appeals addressed this issue in *State v. Ham*, 3d Dist. Wyandot No. 16-09-01, 2009-Ohio-3822, which contained similar facts to the present matter. There, the court of appeals concluded as follows:

> Although this Court has not interpreted R.C. 2929.28(A)(1), we have interpreted R.C. 2929.18(A)(1), which contains very similar language, and determined that the General Assembly intended restitution be available only to actual victims of the offense. We have also found that, except under certain specified circumstances, governmental entities are not 'victims' entitled to restitution for their expenditure of public funds for fighting crime. * * * Therefore, we hold that trial courts have authority to order restitution under R.C. 2929.28(A)(1) *only* to the actual victim(s) of the offense or survivor(s) of the victim in accord with the statute's plain language.
>
> The trial court sub judice ordered that Ham pay [an] amount [] exactly equal to the costs incurred by the Wyandot County Humane Society for the care of Ham's dog, including: food and board, transportation, veterinary evaluations, vaccinations, and other administered medications. * * *
>
> We, however, find that the trial court lacked authority under R.C. 2929.28(A)(1) to order restitution to the humane society. The Wyandot County Humane Society was not a victim of Ham's crime or a survivor of the victim as those terms are used in R.C. 2929.28(A)(1). * * * Accordingly, as governmental entities, humane societies are not 'victims' under the statute, unless otherwise

9

specifically provided. Additionally, the Court of Appeals for the Tenth Appellate District has found that R.C. 2929.28(A)(1) does not authorize restitution to a humane society for the cost of care of animals seized under R.C. Chapter 959.

*Id.* at ¶48-50 (internal citations omitted) (emphasis sic).

{¶28} As discussed therein, the Tenth Appellate District has also taken the position that an order of restitution in favor of a humane society is not authorized by R.C. 2929.28. *See State v. Angus*, 10th Dist. Franklin No. 05AP-1054, 2006-Ohio-4455, ¶32.

{¶29} Further, as noted in *Ham*, R.C. 959.13(C) contemplates financial recourse for humane societies through fines where there is an animal cruelty violation: "'All fines collected for violations of this section shall be paid to the society or association for the prevention of cruelty to animals, if there be such in the county, township, or municipal corporation where such violation occurred.'" *Ham, supra*, at ¶51-52, quoting R.C. 959.13(C).

{¶30} Therefore, we agree with the Third and Tenth Appellate District Courts that restitution cannot be ordered to be paid to a humane society—or other governmental entity—for the costs of caring for an animal victim of abuse under R.C. 2929.28.

{¶31} Marcellino's first assignment of error has merit.

{¶32} The judgment of the Chardon Municipal Court is affirmed in part. The portion of Marcellino's sentence ordering restitution in the amount of $14,773.03 is reversed and vacated.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.