[Cite as *State v. Caroline's Kids Pet Rescue*, 2023-Ohio-761.]

**IN THE COURT OF APPEALS OF OHIO
ELEVENTH APPELLATE DISTRICT
LAKE COUNTY**

| | |
|---|---|
| STATE OF OHIO, | **CASE NOS. 2022-L-024** |
| Plaintiff-Appellee, | **2022-L-025** |
| | **2022-L-026** |
| | **2022-L-027** |
| - vs - | **2022-L-028** |
| | **2022-L-029** |
| CAROLINE'S KIDS PET RESCUE, | |
| | Criminal Appeals from the |
| Defendant-Appellant. | Painesville Municipal Court |

Trial Court Nos. 2021 CRB 00775 A
2021 CRB 00775 B
2021 CRB 00775 C
2021 CRB 00775 D
2021 CRB 00775 E
2021 CRB 00775 F

**O P I N I O N**

Decided: March 13, 2023
Judgment: Affirmed

*J. Jeffrey Holland*, Holland & Muirden, 1343 Sharon-Copley Road, P.O. Box 345, Sharon Center, OH 44274 (For Plaintiff-Appellee).

*Robert N. Farinacci*, 65 North Lake Street, Madison, OH 44057 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1} Appellant, Caroline's Kids Pet Rescue ("Caroline's"), appeals its sentence, following its plea of no contest and the trial court's finding of guilt, on six counts of companion animal cruelty. We affirm.

{¶2} Caroline's is a non-profit corporation that operated an animal shelter in Lake County, Ohio. In 2020, Caroline's' board ejected its director, Jacqueline Childers, from the organization. Shortly thereafter, the Lake Humane Society ("the LHS") searched Caroline's' facility, locating 41 deceased cats and seizing 157 living cats.

{¶3} In 2021, complaints were filed in the trial court charging Caroline's with five counts of cruelty against companion animals in violation of R.C. 959.131(D)(1) and one count of cruelty against companion animals in violation of R.C. 959.131(D)(2). Caroline's initially pleaded not guilty. On December 15, 2021, Caroline's moved the trial court to appoint a commission pursuant to R.C. 2945.50 to take Childers' deposition. In support of its motion, Caroline's maintained that, when Childers left the corporation, she "took with her all of the documents and information needed for the efficient operation of the Company and necessary for any meaningful defense in these cases." The state responded in opposition to the motion, and the trial court summarily denied the motion. On December 22, 2021, Caroline's filed a motion to reconsider its request to take Childers' deposition. Thereafter, the trial court issued a judgment entry denying the motion to reconsider.

{¶4} Subsequently, Caroline's changed its plea to no contest. The trial court found Caroline's guilty and held a hearing on reimbursement and sentencing. The court then sentenced Caroline's to 60 months' probation, imposed a $24,000.00 fine, ordered it to pay reimbursement in the amount of $31,686.63 to the LHS, and permanently banned Caroline's from owning, possessing, or caring for companion animals.

{¶5} Caroline's assigns three errors. We begin our review with Caroline's third assigned error and consolidate our review of Caroline's first and second assigned errors for ease of discussion.

2

Case Nos. 2022-L-024, 2022-L-025, 2022-L-026, 2022-L-027, 2022-L-028, 2022-L-029

**{¶6}** In its third assigned error, Caroline's maintains:

> The Trial Court erred to the prejudice of the Appellant when it foreclosed Appellant's ability to seek and obtain the necessary information and documentation to mount a meaningful defense and defend against the alleged offenses for which it was charged thereby forcing a plea to those offenses as charged.

**{¶7}** Caroline's argues that the trial court erred in denying its motion under R.C. 2945.50 to appoint a commission to take Childers' deposition.

**{¶8}** R.C. 2945.50 provides for depositions in criminal cases, stating:

> At any time after an issue of fact is joined upon an indictment, information, or an affidavit, the prosecution or the defendant may apply in writing to the court in which such indictment, information, or affidavit is pending for a commission to take the depositions of any witness. The court or a judge thereof may grant such commission and make an order stating in what manner and for what length of time notice shall be given to the prosecution or to the defendant, before such witness shall be examined.

The Supreme Court of Ohio has held that a ruling on a request made pursuant to R.C. 2945.50 "rests within the sound discretion of the court, and, unless a plain abuse of that discretion is shown, no prejudicial error occurs." *State v. Hill*, 12 Ohio St.2d 88, 232 N.E.2d 394 (1967), paragraph one of the syllabus. "'The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record.'" *State v. Marcellino*, 2019-Ohio-4837, 149 N.E.3d 927, ¶ 23 (11th Dist.), quoting *State v. Flanagan*, 11th Dist. Ashtabula No. 2015-A-0020, 2015-Ohio-5528, ¶ 42, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678, 148 N.E. 362 (1925).

**{¶9}** Although not referenced by the parties here, Crim.R. 15(A) also addresses depositions in criminal cases, providing in part:

> If it appears probable that a prospective witness will be unable to attend or will be prevented from attending a trial or hearing,

3

and if it further appears that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an indictment, information, or complaint shall upon motion of the defense attorney or the prosecuting attorney and notice to all the parties, order that his testimony be taken by deposition and that any designated books, papers, documents or tangible objects, not privileged, be produced at the same time and place.

{¶10} At least one of our sister courts has determined that R.C. 2945.50 "was superseded by the criminal rules in 1973[.]" *State v. Pastor*, 12th Dist. Butler No. CA84-05-056, 1984 WL 3681, *3 (Dec. 31, 1984). Criminal Rules may displace statutory provisions pursuant to "Article IV, Section 5(B) [of the Ohio Constitution, which] provides: 'The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. * * * All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.'" *Ferguson v. State*, 151 Ohio St.3d 265, 2017-Ohio-7844, 87 N.E.3d 1250, ¶ 20. Where a procedural rule and a statutory provision conflict, "'the rule will control the statute on matters of procedure and the statute will control the rule on matters of substantive law.'" *Ferguson* at ¶ 20, quoting *Boyer v. Boyer*, 46 Ohio St.2d 83, 86, 346 N.E.2d 286 (1976).

{¶11} Here, if Crim.R. 15(A) displaces R.C. 2945.50, Caroline's did not allege that Childers would be unable or prevented from attending a trial or hearing, and, on that basis alone, the motion to depose Childers was properly overruled. *See* Crim.R. 15(A) (permitting a deposition in a criminal case where it appears probable that the intended deponent "will be unable to attend or will be prevented from attending a trial or hearing").

4

{¶12} However, assuming without deciding that R.C. 2945.50 remains applicable, in its ruling on the motion to reconsider its denial of Caroline's' motion, issued December 30, 2021, the trial court explained:

> The Defendant asserts Jackie Childers was ejected from the Defendant on or about September 18, 2020. The Defendant has not satisfied the Court that this deposition is the only means to gather the information it is seeking. Further, no civil action was taken by the Defendant to recover the alleged information from Childers and the Defendant continues its operations with the existing conditions since September 18, 2020.

{¶13} Given the reasons advanced by the trial court for denying the motion, we cannot say that it abused its discretion.

{¶14} Accordingly, Caroline's' third assigned error lacks merit.

{¶15} In its first and second assigned errors, Caroline's argues:

> [1.] The Trial Court erred to the prejudice of the Appellant when it failed to determine on the record and disclose to the Parties the standard of proof required, the quantum of proof and evidence necessary or the definition or description of costs it would permit thereby depriving the Appellant of both procedural and substantive due process.

> [2.] The State failed to submit competent, credible evidence of the claimed expenses by the Lake County Humane Society nor did it present sufficient evidence that the costs claimed were reasonable and necessary resulting from the unlawful acts of the Appellant such that would instill in the trier of fact a reasonable degree of certainty as to the evidence before it.

{¶16} In its first assigned error, Caroline's argues that the trial court violated its due process rights by conducting a reimbursement hearing without explaining to the parties the applicable standards of proof required to order reimbursement or instructing the parties on the types of costs that could be recovered.

5

{¶17} "Reimbursement is payment to a government agency for costs incurred as a result of the offender's actions." *State v. Thames*, 11th Dist. Lake Nos. 2021-L-094, et seq., 2022-Ohio-1715, ¶ 23, *appeal not allowed*, 167 Ohio St.3d 1512, 2022-Ohio-3135, 194 N.E.3d 381, ¶ 23, citing R.C. 2929.28(A)(3). Reimbursement is permitted in cruelty to companion animal cases pursuant to R.C. 959.99(E)(6)(b), which provides:

> A court may order a person who is convicted of or pleads guilty to a violation of division (A) of section 959.13 or section 959.131 of the Revised Code to reimburse an impounding agency for the reasonable and necessary costs incurred by the agency for the care of an animal or livestock that the agency impounded as a result of the investigation or prosecution of the violation, provided that the costs were not otherwise paid under section 959.132 of the Revised Code.

{¶18} Here, the trial court held a hearing regarding reimbursement. Caroline's maintains that its due process rights were violated because the trial court did not explain the standards applicable to reimbursement prior to commencing the hearing.

{¶19} "'The question of whether the due process requirements have been satisfied presents a legal question we review de novo.'" (Citations omitted.) *Puruczky v. Corsi*, 2018-Ohio-1335, 110 N.E.3d 73, ¶ 17 (11th Dist.), quoting *McRae v. State Med. Bd.*, 2014-Ohio-667, 9 N.E.3d 398, ¶ 36 (10th Dist.).

{¶20} Caroline's' first assigned error alleges both procedural due process and substantive due process violations. "A procedural-due-process challenge concerns the adequacy of the procedures employed in a government action that deprives a person of life, liberty, or property." *Ferguson*, 2017-Ohio-7844, at ¶ 42. "'The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."'" *Id.* at ¶ 42, quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96

6

S.Ct. 893, 47 L.Ed.2d 18 (1976), quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

{¶21} Here, at the hearing on reimbursement, the state presented the director of the LHS as its witness, and she testified as to expenses incurred by the LHS for caring for the animals. Caroline's was permitted to, and did proceed to, cross-examine the witness and present its own exhibits. We are unable to discern a procedural due process violation, and we have located no authority holding that a trial court violates procedural due process by failing "to determine on the record and disclose to the [p]arties the standard of proof required, the quantum of proof and evidence necessary or the definition or description of costs it would permit" or by otherwise failing to instruct counsel on the law applicable to a proceeding.

{¶22} Insofar as Caroline's' challenges involve the quality and nature of the evidence, as opposed to the procedure employed by the trial court, we discuss this issue in conjunction with Caroline's' second assigned error, which we address later in this opinion.

{¶23} With respect to substantive due process, "'[w]hile the Due Process Clause of the Fourteenth Amendment on its face would seem to be concerned with only the adequacy of procedures employed when one is deprived of life, liberty, or property, the United States Supreme Court has read it to include a substantive component that forbids some government actions 'regardless of the fairness of the procedures used to implement them[.]'" *Stolz v. J & B Steel Erectors, Inc.*, 155 Ohio St.3d 567, 2018-Ohio-5088, 122 N.E.3d 1228, ¶ 13, quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The Supreme Court of Ohio has "also recognized substantive-due-

7

process protections under the Ohio Constitution." *Stolz* at ¶ 13, citing *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 48-49.

**{¶24}** "In a substantive-due-process challenge, '[t]he first (and often last) issue * * * is the proper characterization of the individual's asserted right.'" *Stolz* at ¶ 14, quoting *Blau v. Fort Thomas Pub. School Dist.*, 401 F.3d 381, 393 (6th Cir.2005), citing *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). "Government actions that infringe upon a fundamental right are subject to strict scrutiny, while those that do not need only be rationally related to a legitimate government interest." *Stoltz* at ¶ 14, citing *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 18.

**{¶25}** Here, although Caroline's' stated assigned error includes a substantive due process challenge, we are unable to discern an argument in support of this contention in Caroline's' brief. If an argument exists in support of a substantive due process argument, "'it is not this court's duty to root it out.'" *Village of S. Russell v. Upchurch*, 11th Dist. Geauga Nos. 2001-G-2395, 2001-G-2396, 2003-Ohio-2099, ¶ 10, quoting *Harris v. Nome*, 9th Dist. Summit No. 21071, 2002-Ohio-6994.

**{¶26}** Accordingly, Caroline's' first assigned error lacks merit.

**{¶27}** In its second assigned error, Caroline's maintains that the reimbursement order was not supported by competent, credible evidence of the reasonable and necessary costs incurred by the LHS for the care of the cats.

**{¶28}** "Ordering restitution and reimbursement is part of criminal sentencing." *Thames*, 2022-Ohio-1715, at ¶ 34, citing *State v. Danison*, 105 Ohio St.3d 127, 2005-Ohio-781, 823 N.E.2d 444, ¶ 6. "'Misdemeanor sentencing is evaluated under an abuse of discretion standard of review.'" *Thames* at ¶ 34, quoting *State v. Petrovich*, 11th Dist. Lake No. 2017 CR 000862, 2019-Ohio-3547, ¶ 23. "Thus, we review restitution and

8

reimbursement orders in a misdemeanor case for an abuse of discretion." *Thames* at ¶ 34, citing *State v. Dent*, 11th Dist. Lake No. 2020-L-110, 2021-Ohio-2551, ¶ 15, *Marcellino*, 2019-Ohio-4837, at ¶ 23, and *State v. Flanagan*, 11th Dist. Ashtabula No. 2015-A-0020, 2015-Ohio-5528, ¶ 42. In the context of restitution, this court has held that ""'[p]rior to imposing a restitution order, a trial court must determine the amount of restitution to a reasonable degree of certainty, ensuring that the amount is supported by competent, credible evidence.'"" *Marcellino* at ¶ 24, quoting *State v. Flanagan*, 11th Dist. Ashtabula No. 2015-A-0020, 2015-Ohio-5528, ¶ 43, quoting *State v. Coldiron*, 12th Dist. Clermont No. CA2008-06-062, 2009-Ohio-2105, ¶ 21. Due to the similarity between restitution and reimbursement, we can discern of no reason why reimbursement orders would not also require support by competent, credible evidence to a reasonable degree of certainty. *See Thames* at ¶ 22-23 (restitution involves payment to the victim of a crime for economic losses caused by the offender, and reimbursement involves "payment to a government agency for costs incurred as a result of the offender's actions"). We therefore review the reimbursement order to determine if the trial court abused its discretion in determining the reimbursement amount to a reasonable degree of certainty, ensuring that the amount is supported by competent, credible evidence.

**{¶29}** At the reimbursement hearing, Megan Newkirk, the shelter manager for the LHS, testified that she is familiar with the costs incurred by the LHS resulting from the seizure of the 157 living cats in this case. Newkirk identified an exhibit that summarized the medical, dental, lab work, and disposal services involved with these cats. She maintained that she determined the costs of the medical services by assessing the cost of the medication, supplies, and veterinarian time. Newkirk identified another exhibit listing every cat that was seized from Caroline's and the medications administered. The

9

medical expenses amounted to a total of $26,212.63.  Newkirk indicated that this was a conservative estimate because she included only one veterinarian examination per cat, at the rate of $20.00, for the exam administered as each cat was processed into the shelter; however, many of the cats required further veterinary care.

{¶30}  With respect to the boarding and nonmedical care, Newkirk indicated that the LHS charged a standard fee of $15.00 per day, per cat, to cover the costs of food, water, shelter, cage-cleaning, exercise, supplies, and facility overhead.  However, Newkirk only requested boarding and nonmedical care charges for four days for each cat, which was a conservative estimate, as many of the cats remained at the LHS for over two weeks, and some for up to five months.  In total, Newkirk requested $9,360.00 for boarding and nonmedical care.

{¶31}  Newkirk acknowledged that this case was used in the LHS' fundraising materials.  However, she maintained that the donations received were not earmarked toward these specific cats but were used toward the LHS' general operations.  Newkirk further acknowledged that the LHS received fees for these cats as they were adopted, but those fees did not fully compensate the organization for the care of the animals.

{¶32}  On cross-examination, defense counsel presented an exhibit that depicted a screenshot from a news story regarding the seizure of the cats from Caroline's.  The news article directed those interested in donating to the LHS to assist with the cats rescued from Caroline's to visit the LHS website.  In addition, Newkirk acknowledged that one of the cats from Caroline's, Polly, was very sick for a long period of time, and that the LHS sought to raise money for Polly through an "angel fund."  Newkirk did not know how much was specifically raised for Polly's care, although the organization requested $700.00 from donations, and Polly's medical care cost $736.48.  Newkirk further testified

10

Case Nos. 2022-L-024, 2022-L-025, 2022-L-026, 2022-L-027, 2022-L-028, 2022-L-029

that one method of fundraising used by the LHS is to solicit "cage sponsors," who donate a specific amount and receive a plaque on a cage. However, the donations are not specifically utilized in caring for the animal being caged. Newkirk acknowledged that a defense exhibit demonstrated that the LHS sought a cage sponsor in relation to one of the cats seized from Caroline's but reiterated that the donations solicited from cage sponsors are used for the organization in general. Newkirk contended that all donations received by the LHS are used for the general operation of the organization, unless a donation is in the form of an angel fund specific to one animal, in which case donations up to the amount requested by the LHS are used for that specific animal's care.

{¶33} Further, on cross-examination, Newkirk testified that it cost $46.00 to spay/neuter a cat. However, she indicated that the exhibit of medical costs that she had prepared assessed a cost of only $25.00 per cat that required spaying/neutering. With respect to $4,900.00 allocated on Newkirk's exhibit for dental care, Newkirk maintained that 47 cats were identified by the veterinarian as requiring dental care, and two of the cats required two dental procedures due to the severity of their conditions. Newkirk requested $100.00 per dental procedure, explaining that this was also a conservative estimate because dental procedures of this type would cost a minimum of $500.00 at a veterinarian's office.

{¶34} On redirect, Newkirk confirmed that the medical expenses should have included an additional $20.00 per cat that was spayed or neutered, and she testified that 13 cats required spaying/neutering. Further, Newkirk clarified that a $20.00 flat fee for the initial veterinary examination was charged for each cat, but, again, no further veterinary examinations were included in the calculation regardless of whether the cats received follow-up veterinary care.

Case Nos. 2022-L-024, 2022-L-025, 2022-L-026, 2022-L-027, 2022-L-028, 2022-L-029

{¶35} The trial court ordered reimbursement to the LHS in the amount of $31,686.63, representing the costs that Newkirk had identified in her testimony, including the additional $260.00 for the spaying/neutering, less the fees recouped by the LHS through adoption.[1]

{¶36} Caroline's argues that the trial court erred to its prejudice by refusing to offset moneys paid by third parties for the care of the animals, resulting in duplicate payments to the LHS for the same expenses. Additionally, Caroline's maintains that the trial court erred in permitting reimbursement in the amount of the LHS' flat rates. In making these arguments, Caroline's relies on case law pertaining to restitution.

{¶37} Although restitution and reimbursement share characteristics, restitution orders pursuant to statute "shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense[.]" R.C. 2929.28(A)(1). Accordingly, cases have limited a victim's ability to recover restitution where the victim has been reimbursed by a third party, as, in such cases, courts have held that the victim "'has not suffered an economic loss.'" *State v. Wiley*, 10th Dist. Franklin No. 16AP-686, 2017-Ohio-2744, ¶ 10, quoting *State v. Crum*, 5th Dist. No. 12 CAA 08 006, 2013-Ohio-903, ¶ 12.

{¶38} However, R.C. 959.99(E)(6)(b) does not limit reimbursement in the same manner as restitution is limited under R.C. 2929.28. Instead, R.C. 959.99(E)(6)(b) permits the court to order reimbursement of "the reasonable and necessary costs incurred by the agency for the care of an animal * * * provided that the costs were not otherwise

---

1. Although the LHS did not concede that adoption fees were required to be set off against its costs, it indicated to the trial court that it was not going to argue the issue, and the issue is not presently before this court.

Case Nos. 2022-L-024, 2022-L-025, 2022-L-026, 2022-L-027, 2022-L-028, 2022-L-029

paid under section 959.132 of the Revised Code." R.C. 959.132 provides a process for an animal owner to post a bond for the care of a seized animal. There is no dispute that no bond was paid pursuant to R.C. 959.132 in the present case. Accordingly, the trial court was required only to determine if the costs were reasonably and necessarily incurred by the LHS and was not required to offset fundraising moneys.

{¶39} Newkirk's testimony provided competent, credible evidence of the costs incurred by the facility to a reasonable degree of certainty. Newkirk explained that the flat fees requested for the boarding and care of the animals were based upon an assessment of the actual costs incurred by the LHS. In determining the boarding costs for an impounding agency, it would be unreasonable to require a precise dollar figure to be computed for the amount of such costs per specific animal, and we cannot say that the costs of $15.00 per day, per cat, is unreasonable, particularly where the evidence indicates that many of the cats were boarded for far longer than the four days for which the LHS requested boarding costs. Similarly, we cannot say that the veterinary exam cost of $20.00 per cat or the dental procedure cost of $100.00 per procedure were unreasonable or unnecessary. Last, we cannot say that the $46.00 spaying/neutering cost was unreasonable. Although Caroline's argues that spaying/neutering is discretionary and not necessary, it is the nature of an impounding agency to care for multiple animals and provide placements for them. We cannot say that spaying/neutering the cats was unnecessary given the nature of LHS.

{¶40} Accordingly, Caroline's second assigned error lacks merit.

{¶41} The judgment is affirmed.

13

JOHN J. EKLUND, P.J.,

MATT LYNCH, J.,

concur.